694 So.2d 1162 (1997)
STATE of Louisiana, Appellant,
v.
James Ray ALFORD, Appellee.
No. 29343-KW.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1997.
Dissenting Opinion May 13, 1997.
Rehearing Denied June 12, 1997.
*1163 Richard Ieyoub, Attorney General, Frank Brindisi, Assistant Attorney General, for Appellant.
Davenport, Files & Kelly by Thomas W. Davenport, Jr., Monroe, for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
Dissenting Opinion of Judge Caraway, May 13, 1997.
BROWN, Judge.
The issue in this expedited appeal is whether the trial court erred in excluding from evidence defendant's incriminating statement regarding the ownership of certain marijuana plants.

Facts and Procedural History
In May 1994, Crime Stoppers forwarded to the Union Parish Sheriff's Office an anonymous tip regarding a marijuana patch in the Truxno area of the parish. Acting on the tip, Detective Jerome McKenzie found marijuana plants in the area as described by the anonymous caller. The plants were small and thereafter Det. McKenzie periodically checked the plot. When the plants were ready to be harvested, he set up surveillance.
On August 21, 1994, defendant and his wife were walking in the area under surveillance. Detective McKenzie approached the Alfords and questioned them. Defendant gave two conflicting explanations of his actions, then admitted his ownership of the marijuana patch. After this admission, defendant was arrested and for the first time, advised of his rights under Miranda.
Defendant was charged by bill of information with cultivation of marijuana, a violation of La.R.S. 40:966. Defendant filed a motion to suppress the physical evidence and statements obtained by the officers.
On June 30, 1996, the trial court ruled that the physical evidence was admissible, but granted defendant's motion to suppress his *1164 statement regarding ownership of the marijuana plants. The state filed a writ application with this court, which was granted and docketed for expedited appeal.

Discussion
The following testimony was elicited at defendant's preliminary examination held on January 18, 1995.
Detective Jerome McKenzie testified that in early 1994, Crime Stoppers passed on to the Union Parish Sheriff's Office an anonymous tip regarding a marijuana patch in the Truxno area.[1] Det. McKenzie got permission to go onto the property upon which the marijuana was growing from the Riverwood Timber Company.[2]
Det. McKenzie and Deputy Curtis Batton walked the clear-cut area of the property and found 75-80 marijuana plants approximately six inches tall in a 10'× 10' patch. They took some photographs and returned four weeks later to determine whether the patch was being cultivated. The officers noted that the patch had been tended; it had been split into two different plots which were encircled with chicken wire to keep the animals out and the patches appeared to have been weeded.
Some four to five weeks later, the officers returned to the marijuana patch. The plants were eight to nine feet tall, so they decided to put the area under surveillance. On the fourth day of the surveillance, August 21, 1994, around 1:00 p.m., Det. McKenzie and Deputy Charles Thomas, who were hidden in the brush, heard someone coming through the woods. Det. McKenzie revealed his presence and identified himself to defendant and his wife and told them that he had been watching a marijuana patch. According to the officer, at this time, neither defendant nor his wife were suspects. Det. McKenzie testified that he confronted the Alfords to find out what they were doing in the area.
A motion to suppress hearing was held on July 6, 1995. The following testimony was elicited.
Detective McKenzie's testimony was similar to that given at the preliminary examination. Det. McKenzie noted that in addition to the tip about the marijuana patch, Crime Stoppers had received an unrelated tip that defendant was growing marijuana in the area.
Det. McKenzie stated that on August 21, 1994, he and Deputy Thomas had been watching the marijuana patch for about an hour and a half before he heard voices. Det. McKenzie came out of hiding and approached defendant and his wife. According to Det. McKenzie, he had been acquainted with the Alfords for approximately five or six years. Det. McKenzie announced his law enforcement affiliation and asked the Alfords, who were walking on a trail between the two patches, what they were doing in the area. They told him they were just walking on their property.
Det. McKenzie told defendant that he knew the property belonged to someone else. At this time, defendant stated that they were looking for one of their cows. Det. McKenzie then asked defendant if the marijuana was his. Defendant didn't respond, and the two continued talking for several minutes. Finally, defendant told the officer that it was his marijuana, but that his wife didn't know anything about it. Det. McKenzie stated that it was at that point and not before that both defendant and his wife were under suspicion.
Det. McKenzie reiterated that there were no promises, nor were there threats, inducements or any other type of coercive behavior. Following defendant's admission, Det. McKenzie read defendant his Miranda rights and placed him under arrest. He did not arrest Mrs. Alford. Det. McKenzie and Deputy Thomas collected the marijuana plants and took them and defendant to the sheriff's office.
*1165 On cross examination, Det. McKenzie testified that the patch was on clear-cut property. Det. McKenzie's attention was first drawn to defendant and his wife when he heard car doors slam and then voices, approximately 10-20 minutes before he ever saw the couple. Det. McKenzie stated that he recognized the Alfords' voices as they got closer to him. The Alfords were within 20-30 feet of the marijuana patches when defendant told Det. McKenzie that he was out walking on his property. Det. McKenzie stated that he told defendant, prior to questioning him about the marijuana, that defendant had placed him in an embarrassing situation, meaning that it was a bad scenario because of their acquaintance, not that he was going to have to arrest defendant. Det. McKenzie denied telling defendant that unless he or his wife confessed, they were both going to jail, nor did he say that he would let Mrs. Alford go if defendant confessed.
Deputy Curtis Batton testified that Crime Stoppers gave the sheriff's office tips that someone was growing marijuana in the Truxno area; however, defendant wasn't named as a suspect. In fact, the officers had no idea who owned the marijuana patch. Deputy Batton stated that he was not present when defendant was arrested.
Lawrence Avant, a local supervisor with the State Department of Agriculture and Forestry, testified that Christine Holloway Malone owned property in Truxno near the marijuana patch. Mr. Avant stated that Ms. Malone's 20 acre tract had been clear-cut and that he was contacted to write recommendations regarding reforestation of the property. Ms. Malone's tract, because it was clear-cut, was distinguishable from the surrounding property, which had older growth timber. Some of the surrounding acreage, which had portions that were clear-cut, was owned by Riverwood and it had been marked by yellow boundary lines. Mr. Avant testified that he did not know upon whose property the patch of marijuana was located.
Defendant's wife, Rebecca Alford, testified that she and her husband own land near the marijuana patch. According to Mrs. Alford, defendant was arrested on Christine Malone's land. Mrs. Alford stated that Det. McKenzie told her and her husband to "freeze" and that he was "ranting and raving" and cursing, saying, "I can't believe you put me in this bind." Det. McKenzie told them that if someone didn't "own up to it" he'd "take them both in." Mrs. Alford denied that she or defendant told the officer that they were walking on their property; rather, they told him that they were looking for some cows. According to Mrs. Alford, Det. McKenzie "kinda coerced" defendant into saying that the marijuana was his. At no time did the officer advise her husband of his Miranda rights.
Defendant testified that the marijuana patch was on Christine Malone's property, which is adjacent to his property. He claimed that Det. McKenzie said he'd take in both defendant and his wife "unless one of you claim it" at which point defendant said that the marijuana was his. According to defendant, he was out of state 98% of the time and he confessed to protect his wife.
Defendant stated that he admitted it was his rather than trying to deny ownership, even though he has known Det. McKenzie for 20 years and considers him a friend. According to defendant, the officer has always been civil and respectful.
Defendant testified that there have been patches of marijuana in the Truxno area for years. Defendant stated that he has been accused of having pot growing on his land before. "I own four hundred and forty acres of land. You find ten patches. Lot of people's gonna say I got four of them.... I don't lose no sleep over it, sir." At no time after his arrest did defendant tell Det. McKenzie that the marijuana was not his because, according to defendant, "[it] wouldn't have done no good."
On appeal, the state asserts that the trial court erred in suppressing defendant's statement regarding ownership of the marijuana plants.
The trial court found that a "custodial environment existed after Dy. McKenzie commanded the defendant to halt and identified himself as the police." The critical issue is whether defendant's statement occurred during the course of a custodial interrogation. *1166 It is undisputed that the statement was made by defendant, but without first being advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Before a confession or inculpatory statement can be introduced into evidence, the state bears the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, threats, inducements or promises. La.R.S. 15:451; La.C.Cr.P. art. 703(D); State v. Robinson, 384 So.2d 332 (La.1980); State v. Pittman, 95-382 (La.App. 5th Cir. 10/01/96), 683 So.2d 748.
The state must also show that a defendant who confesses during a custodial interrogation was first advised of his rights under Miranda v. Arizona, supra. State v. Harris, 627 So.2d 788 (La.App. 2d Cir.1993), writ denied, 93-3188 (La. 03/18/94), 634 So.2d 851. Custodial interrogation includes situations which fall short of an actual arrest but where the accused is questioned by the police in a setting which indicated that he has been deprived of his freedom of action in a significant way. State v. Menne, 380 So.2d 14 (La.1980), cert. denied, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980).
Whether a person has been taken into custody, detained or deprived of his freedom of action in a significant way is determined by an objective test on a case by case basis. Id. The factors involved include whether there was probable cause to arrest prior to questioning, whether the statements and actions of the police indicate an intent to hold or restrain the accused, whether the accused reasonably believed he was restrained and the extent to which the investigation had focused on the accused. State v. Thompson, 399 So.2d 1161 (La.1981); State v. Womack, 592 So.2d 872 (La.App. 2d Cir.1991), writ denied, 600 So.2d 675 (La.1992).
The situation involved herein is more analogous to a Terry stop than to a formal arrest. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the court held that a police officer who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion. The stop and inquiry must be reasonably related in scope to justification for their initiation. Terry, supra. Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. The detainee, however, is not obliged to respond, and unless the detainee's answers provide probable cause to arrest, he must be released. Thus, Terry stops are not subject to the dictates of Miranda. Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).
Further, a seizure does not necessarily occur when an officer approaches a person to ask a few questions. As long as a reasonable person would feel free to disregard the officer and go about his business, such an encounter is consensual. Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).
We reject in this case the contention that the approach of Det. McKenzie to inquire about defendant's presence on open rural land by itself rendered defendant in custody.
In Berkemer, supra, Justice Marshall wrote for the court:
Although Trooper Williams apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged with a traffic offense, Williams never communicated his intention to respondent. A policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. Nor do other aspects of the interaction of Williams and respondent support the contention that respondent was exposed to "custodial interrogation" at the scene of the stop. From aught that appears in the stipulation of facts, a single police officer asked respondent a modest number of questions and requested him to perform a simple balancing *1167 test at a location visible to passing motorists. Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest.
Id., 468 U.S. at 442, 104 S.Ct. at 3151. (Footnotes omitted).
In the instant case, Detective McKenzie approached defendant and his wife to ask why they were in the area under surveillance. The Alfords were not initially suspected as being involved with cultivation of the marijuana. The officer's encounter and subsequent conversation with defendant and his wife occurred in a clear-cut area which is akin to an open field. Defendant and Det. McKenzie had known each other on friendly terms for several years. Defendant was not arrested, restrained, handcuffed, coerced, threatened, intimidated, verbally abused or even detained for an extended period of time. Det. McKenzie testified that until defendant's admission, he and his wife were free to leave the area at any time had they wanted to do so.
Clearly a crime was occurring and Det. McKenzie acted reasonably under the circumstances by approaching the Alfords and asking why they were in the area. Miranda warnings were not required and Alford's response to this reasonable inquiry is admissible evidence.
A case involving substantially similar facts is U.S. v. Sylvester, 848 F.2d 520 (5th Cir. 1988). In Sylvester, federal agents raided a baited field. The agents questioned each defendant in the field. Defendants later sought to suppress their statements, alleging that they were not advised of their Miranda rights. The court found that the questioning did not constitute a "custodial interrogation" requiring Miranda warnings. See also U.S. v. Seguin, 779 F.Supp. 54 (W.D.La.1991).
We therefore conclude that defendant was not taken into custody for the purposes of Miranda until his arrest. Consequentially, the statement made prior to that point is admissible. The trial court erred in concluding to the contrary and in suppressing defendant's statement.

Conclusion
The trial court's ruling granting defendant's motion to suppress is REVERSED and this matter is REMANDED for further proceedings.
CARAWAY, J., dissents with written reasons.
CARAWAY, Judge, dissenting.
I respectfully dissent.
The quote from Berkemer v. McCarty as cited by the majority states that in determining whether a defendant is "in custody" and exposed to "custodial interrogation," "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." The trial court, in this instance, applied that reasonable man test by considering the facts surrounding the arrest site and the conflicting testimony of Dy. McKenzie and Mr. and Mrs. Alford of the discussion or interrogation preceding the defendant's confession. Though the weighing of that evidence might lead me like the majority to a different conclusion depending upon the credibility given to the officer's or the defendant's testimony, the trial court's view that the restraints upon the defendant were comparable to those associated with an arrest is supported by evidence in the record.
Without significantly emphasizing the view presented by Mr. and Mrs. Alford regarding the officer's coercive statements and inducement which they claim prompted the confession, the trial court's written opinion appeared to rest primarily on the following portion of Dy. McKenzie's testimony:
Q. At this time when you were talking with him before any statement was made toby him about the ownership of the marijuana, did you tell him that you have put me in a baran embarrassing situation, Jamie?
A. Yes, sir. I did.
Q. Meaning that you were gonna have to arrest him?
A. Yes, sir.
Q. And did you tell him
A. Well I wouldI wouldn't say meaning that I had to arrest him. I mean it was just ait was a bad situation.
Q. Bad situation `cause you had
A. Whether he was a
Q. You had information he was growing marijuana in this area and now he's twenty to thirty feet from it?

*1168 A. Yes, sir.
Q. And did you tell him that I can't let you walk away, I respect my job too much?
A. I probably said something along that line. Yes, sir.
(Emphasis added).
With that message from the officer in the heat of an August afternoon in the middle of a remote thicket far from a public highway, the defendant could look at the marijuana growing nine feet tall beside him and reasonably believe he was under arrest. It was a "bad situation" from the defendant's perspective and the pressure exerted by the situation upon him could impair his free exercise of his constitutional privileges requiring that the Miranda warning be given.

APPLICATION FOR REHEARING
Before HIGHTOWER, BROWN, WILLIAMS, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] A detective with the Farmerville Police Department, McKenzie is also a deputy with the Union Parish Sheriff's Office.
[2] Det. McKenzie had previously obtained a property description and was told by the tax assessor that the property belonged to Riverwood.