JjBYRNES, Judge.
The Board of Commissioners of the Orleans Levee District (“Levee Board”) appeals the trial court’s ruling that granted the plaintiffs’ exception of no cause of action and dismissed the Levee Board’s re-conventional demand. The Levee Board also appeals the trial court’s denial of its exception of prematurity. We affirm.
This suit involves claims concerning the Bohemia Spillway litigation. Louisiana Act 99 of 1924 in pertinent part directed the Levee Board to have the authority to acquire property, either by purchase, donation or expropriation, for purposes of establishing the Bohemia Spillway. Thereafter the Levee Board accumulated property necessary for the construction of the Bohemia Spillway.
In 1984, Article VII, § 14 of the Louisiana Constitution was amended to provide for the return of property, including mineral rights, to former owners from whom the properties had previously been expropriated, or purchased under the threat of *115 expropriation when the legislature declared by law that the purpose of the expropriation had ceased to exist and ordered the return of the properties to the former owners. The amendment declared that this was not a prohibited donation.
19Act 233 of 1984 declared that the public purpose of the Bohemia Spillway had ceased to exist and directed the Levee Board to return the ownership of the property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation. The legislature decreed that the lands had to be returned to persons designated by the Department of Natural Resources (“DNR”). The DNR was authorized to determine entitlement to certification for eligibility for return of property in Act 1364 of 1997, which amended Act 233 of 1984. The Levee Board transferred or returned the property to the landowners.
On February 22, 1988, plaintiffs, Haspel & Davis Milling & Planting Co., Ltd., Jean Mayer Connell, Joseph Jean Torre, Sr., Bohemia Planting Co., Inc. Leonie Davis Rothschild, and Arthur Q. Davis, filed a class action, seeking payment of revenues from the Bohemia Spillway from 1984 until the time that their property was transferred to them by the Levee Board. Although the trial court originally entered judgments against the landowners, this court reversed and held that the landowners and their successors were entitled to mineral and other royalties from June 29, 1984, the effective date of the 1984 Act, rather than from.the date of the actual transfers of property. This court found that plaintiffs stated a cause of action. Haspel & Davis Milling & Planting Co., Ltd. v. Board of Levee Com’rs of the Orleans Levee Dist., 95-0233, (La.App. 4 Cir. 9/4/96), 680 So.2d 159, writ denied, 96-2430 (La.12/6/96), 684 So.2d 932.
|sOn August 21, 1997, the Levee Board filed a reconventional demand, alleging that the DNR’s- certifications and the Levee Board’s transfers of property back to the landowners were invalid because the DNR did not determine if the claimants’ property had been taken by expropriation or by sale under threat of expropriation. The Levee Board sought the return of those properties that could not qualify under the expropriation/threat of expropriation standard. Plaintiffs filed various exceptions, including an exception of no cause of action.
In its judgment dated January 15, 1998, the trial court sustained the plaintiffs’ exception of no cause of action to the Levee Board’s reconventional demand and dismissed the Levee Board’s claims with prejudice. The plaintiffs’ other exceptions were declared moot. At the hearing the trial court based its ruling on the finding that:' “as a matter of law, upon the passage of Act 99 of 1924, any purchase the Levee Board made in the Spillway was made under the threat of expropriation.” In its judgment dated June 30, 1998, the triál court overruled the Levee Board’s exceptions qf no right of action, sovereign immunity, and prematurity for failure to follow proper administrative procedure. The Levee Board’s appeal followed.
On appeal the Levee Board contends that the trial court erred in denying the Levee Board’s reconventional demand by misinterpreting the meaning of Act 233 of 1984 and failing to find that the DNR certifications and return of properties to the property owners were invalid. The Levee Board contends that the trial court Lerred in denying the Levee Board’s exception of prematurity, and in finding that the plaintiffs’ other exceptions are moot.

Reconventional Demand

The Levee Board contends that it has stated a cause of action' in its reconventional demand, alleging that the DNR erroneously certified that numerous claimants’ ancestors in title lost their land by expropriation without determining 'whether each piece of property originally had been sold to the Levee Board under the threat of *116 expropriation. The Levee Board asserts that most of the property in the Bohemia Spillway had been purchased by the Levee Board in consensual, arm’s length transactions for fair market value.
The Levee Board maintains that the trial court erred in ruling that the mere existence of expropriation authority constitutes a threat of expropriation for determining what parties have claims under Act 233 of 1984 which directed the Levee Board “to return the ownership of property acquired by expropriation or by purchase under threat of expropriation.” The Levee Board argues that on an individual basis the property owner has the burden to show that the property was taken due to expropriation or the threat of expropriation. The Levee Board asserts that otherwise the entire State is under a threat of expropriation because expropriation authority exists in various agencies, political subdivisions and private organizations on virtually all privately held property within the State. The Levee Board notes that in the certification process the DNR’s application forms |Bdid not request information about expropriation or threat of expropriation, and the property was improperly transferred.
The Levee Board argues that the plaintiffs as movers of the exception of no cause of action have a heavy burden to establish that the Levee Board’s petition or reconventional demand does not state a cause of action. The exception of no cause of action tests the legal sufficiency of the petition; therefore, the court must determine whether the law affords a remedy for the particular harm alleged by the plaintiff. Daly v. Reed, 95-2445 (La.App. 4 Cir. 2/5/96), 669 So.2d 1293, 1294. In reviewing a trial court’s ruling on the exception, the appellate court should conduct a de novo review. An exception of no cause of action is triable on the face of the papers, and, for purposes of determining issues raised by the exception, well-pleaded facts in petition must be accepted as true. City of New Orleans v. Board of Com’rs of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237.
The Levee Board complains that the plaintiffs must do more than show that they currently own the land in the Bohemia Spillway that was previously transferred to them by the Levee Board to show ownership; each landowner must prove that the transfer of property was in response to an actual threat of expropriation. The Levee Board maintains that the existence of expropriation authority is not tantamount to an ongoing threat of expropriation.
The Levee Board refers to Danforth v. United States, 308 U.S. 271, 286, 60 S.Ct. 231, 84 L.Ed. 240 (1939), which states:
|fi... The mere enactment of legislation which authorizes condemnation of property cannot be a taking. Such legislation may be repealed or modified, or appropriations may fail.
The United States Supreme Court held that the act of authorizing condemnation is not of itself the actual taking of the property; however, the Supreme Court did not refer to whether such enactments threaten the taking of property. In the present case, the issue is not whether the act of authorizing the expropriation is a taking, but whether the enactment of the act granting expropriating authority in itself is a threat of expropriation.
The Levee Board also cites Wendy’s Intern., Inc. v. City of Birmingham, 868 F.2d 433 (11 Cir. (Ala.) 1989), in which the federal court rejected the plaintiffs argument that a city master plan that called for the redevelopment of the city’s downtown area to build a health clinic, which would include the authority to expropriate the plaintiffs land in pursuit of that plan, constituted a threat of expropriation. The federal court held that: “Only after the developer has extended all reasonable efforts to reach a fair settlement and obtain the property by agreement shall the city be obligated to exercise its eminent domain power.” In footnote 7, the federal *117 court found that the plan merely authorized the exercise of eminent domain as a last resort. In that case the court stated that: “the City Council still might select another site for the Medical Services Project.” Id. at 436.
In the present case the Levee Board points out that Act 99 of 1924 gave it the power to acquire the Bohemia property by purchase, donation or expropriation. Only after the Levee District had unsuccessfully exerted all reasonable efforts to obtain the property by purchase or donation would it be obligated to exercise its expropriation power. However, Act 99 of 1924 expressly gave the Levee Board |7the authority to expropriate the property before negotiations began. In Wendy’s, negotiations began before the passage of the redevelopment plan for construction of a health clinic.
Further, the Levee Board did not challenge the certification of the landowners before the Levee Board issued acts of transfer to the property owners. These acts acknowledged that the property interest of the certified owners was acquired by expropriation or by purchase under threat of expropriation. Under the DNR certification process, the landowners were not required to establish that the property to which they were given title had been taken by the Levee Board by expropriation or by the threat of expropriation on an individual basis.
The Levee Board refers to Tecumseh Corrugated Box Co. v. Com’r of Internal Revenue, 932 F.2d 526 (6 Cir.1991), a tax case in which the federal court held that the fact that the petitioner was aware that the government had condemnation authority and the petitioner’s land fell within the proposed recreation area was irrelevant. The availability of funds to purchase petitioner’s property did not create a legitimate expectation of condemnation. The government’s appraisal and offer to purchase the petitioner’s land did not constitute an imminent threat of condemnation. That case involved tax court interpretations of the threat of condemnation where the Internal Revenue Code provided certain tax breaks for taxpayers whose property has been involuntarily transferred. However, in that case the taxpayer had already transferred the land to a related company before the condemnation of the property so that the tax break did not apply. The federal court noted that one of the purposes of the transfer of property to another party was tax avoidance. The federal court found that Tecumseh could not account for capital gains utilizing the | stax break of using the installment method. The present case does not involve a tax interpretation. The property owners previously did not transfer the land to other parties.
Further, the tax court has recognized that an enactment of an act provides a threat of condemnation. In S & B Realty Co. v. Com’r of Internal Revenue, 54 T.C. 863, 870, 1970 WL 2381 (1970), the petitioner owned property in an area to which federal funds were provided for urban renewal. The Board of Commissioners of the Urban Renewal and Community Development Agency of Louisville, Kentucky adopted a resolution providing that all land or other property, etc. described as the West Downtown Renewal Area should be acquired in the name of that Agency by purchase or condemnation. The landowner was given four alternatives: (1) to improve or repair the property in compliance with the direction of the Urban Renewal Agency; (2) to sell the property to a third party would have to make the specified improvements; (3) to sell the property to the Urban Renewal Agency at a negotiated price; and (4) to do nothing and thereby permit condemnation. In the present case where the Levee Board had the option to acquire by purchase or donation before expropriation. In S & B Realty Co., the renewal agency had options before the property would be condemned. The tax court noted the significance of the word “threat”. The statute did not require the possibility of condemnation to be *118 reduced to a certainty. Any reasonable construction of the word “threat” recognized the possibility that the impending consequence may never occur. The tax court found that the resolution was a threat of condemnation so that a measure of tax relief should be granted to those who were compelled to convert their property into cash.
|sThe present case presents the issue of whether the enactment of the legislative act (Act 99 of 1924) itself created the threat of expropriation. The Levee Board points out that no Louisiana case has directly confronted this issue. It appears to be one of first impression or res nova in Louisiana.
If the Louisiana legislature intended that only the last resort of expropriation was the criteria for determining whether the property was voluntarily or involuntarily acquired by the Levee Board, the legislature would not have included the additional language that the Levee Board also should return property whieh it acquired by purchase under the threat of expropriation in Act 233 of 1984. Having the authority to exercise the power of expropriation, the Levee Board’s attorney was authorized to institute formal expropriation proceedings against Bohemia landowners who refused to transfer their property. When the landowners originally transferred their property to the Levee Board at an appraised price after Act 99 was enacted in 1924, the landowners were forced to accept the offered price or go into litigation resulting in expropriation. The compelled acceptance of the offered price was part of the expropriation process. The trial court properly found that the passage of the Act 99 of 1924 giving the Levee Board the expropriation authority constituted the threat of expropriation under the meaning of Act 233 of 1984. The trial court did not err in finding that the Levee Board failed to state a cause of action in its reconventional demand.

Exception of Prematurity

The Levee Board also contends that the plaintiffs’ action filed in civil district court on February 22, 1988 was premature because plaintiffs had not exhausted all of their administrative remedies. Plaintiffs brought suit seeking a declaratory judgment and injunctive relief to declare that the Levee Board had no |inmineral rights or use of any revenues that were to be returned to the former owners; to declare that the title to the mineral and other royalty interests vested with the former owners as of June 29, 1984; and to declare that the Levee Board be required to turn over all royalties and other revenues accumulated since June 29, 1984. Plaintiffs asked for injunctive relief to have the Levee Board place in escrow with the Clerk of Court all revenues received since June 29,1984.
At the time of the original petition, the DNR had just commenced the application process and did not certify any owners to the Levee Board until 1989 through 1991. The Levee Board asserts that the plaintiffs’ action was premature because the DNR had not certified the plaintiffs as owners and had not compiled its rules necessary for the Levee Board to provide the accounting as indicated in Act 233 of 1984, as amended. Further, the Levee Board asserts that if the applicant was aggrieved by the actions by the Levee Board, Section 4 of Act 233 provided that the applicant could seek judicial review of the Levee Board’s action by filing suit in the Twenty-Fifth Judicial District Court.
Generally, administrative remedies must be exhausted before a litigant is entitled to judicial review. Hidalgo v. Wilson Certified Exp., Inc., 94-1322 (La. App. 1 Cir. 5/14/96), 676 So.2d 114. Where irreparable injury might otherwise result, the litigant may by-pass administrative remedies and evoke the jurisdiction of the court. State Bd. of Ed. Thru Southern University v. Anthony, 289 So.2d 279, 284 (La.App. 1 Cir.1973), writ denied, 292 So.2d 246 (La.1974); Girouard v. State *119 Through Dept. of Educ., 96 1076 (La.App. 1 Cir. 6/9/97), 694 So.2d 1163. The defendant who files an exception raising the objection of prematurity has the initial burden of showing that an administrative In remedy is available, by reason of which the judicial action is premature; once the existence of the administrative remedy is established, the burden shifts to the plaintiff to show that administrative remedies have been exhausted or that the situation is one in which plaintiff is entitled to judicial relief because any administrative remedy is irreparably inadequate. La. C.C.P. art. 926; Girouard, id.
In Henry v. State, 94-0658 (La.App. 4 Cir. 11/30/94), 646 So.2d 519, 520, this Court found that the exception of prematurity was without merit where the plaintiff/landowners sought damages for royalties paid to the Levee Board for oil and gas produced before the expropriated lands were returned to the landowners. This court noted that there were no administrative procedures available for these claims; and the exception of prematurity was inapplicable. (However, in that case this court held that the landowners did not have a cause of action based on the alleged tortious conduct when the original expropriation legislation was passed because the state and the Levee Board were entitled to sovereign immunity at that time. In the present case, the Levee Board is not entitled to sovereign immunity.)
In the present case the plaintiffs are not questioning the DNR’s authority or process of determining ownership. Plaintiffs are seeking relief beyond the DNR’s authority to grant. There was no administrative relief available because the DNR did not have the authority to decide whether the Levee Board could retain or must give up the right to mineral royalties and revenues as of June 29, 1984, or to provide for escrow and turnover of revenues from the Bohemia Spillway lands. In Act 1364 of 1997, which amended and reenacted Section 1 of Act 233, procedures and guidelines were implemented for setting up an escrow account and payment of revenues by the Levee Board. Until then the procedures and guidelines had not been authorized by statute to be followed by the DNR and the Levee Board. This indicates that the plaintiffs properly requested declaratory and injunctive relief |12where no legislative authority for the procedures had previously been implemented. In seeking declaratory and injunctive relief, the plaintiffs’ action was not premature.

Plaintiffs’ Other Exceptions

The Levee Board further contends that the trial court erred in ruling that the plaintiffs’ other exceptions were moot. The Levee Board notes that the plaintiffs’ exceptions include an exception of no right of action, prescription, res judicata, and improper use of the class action procedure. Because the Levee Board’s reconventional demand did not state a cause of action, this court agrees with the trial court’s ruling that the plaintiffs’ other exceptions are moot.
Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.