807 So.2d 257 (2001)
BALLY'S LOUISIANA, INC.
v.
The LOUISIANA GAMING CONTROL BOARD.
No. 1999 CA 2617.
Court of Appeal of Louisiana, First Circuit.
January 31, 2001.
Writ Denied January 11, 2002.
*258 Daniel Lund, Stephen P. Schott, Karina P. Gentinetta, New Orleans, for Plaintiff-Appellee Bally's Louisiana, Inc.
John J. Cummings, III, Thomas W. Tucker, Christopher C. Pickren, New Orleans, for Intervenor-Appellant Metro Riverboat Associates, Inc.
L. Rand Dennis, Baton Rouge, for Defendant-Appellee the Louisiana Gaming Control Board.
Before: GONZALES and *259 PETTIGREW, JJ., and EDWARDS,[1] J. Pro Tem.
PETTIGREW, J.
In this case, intervenor, Metro Riverboat Associates, Inc. ("Metro"), appeals from an unfavorable judgment of the trial court whereby a permanent injunction was issued enjoining the Louisiana Gaming Control Board ("Board") from taking any action to enforce certain escrow orders entered by the Board relative to the gross gaming revenues of the Belle of Orleans, L.L.C. ("Belle"). For the reasons that follow, we reverse in part and remand for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY
Belle is a Louisiana limited liability company that is the owner and licensee of Bally's Casino Lakeshore Resort ("Casino"). Belle consists of two partners, Metro, which holds a 50.1 percent interest in Belle, and Bally's Louisiana, Inc. ("Bally's"), which holds a 49.9 percent interest in Belle. The management and operation of the Casino is governed by a Management Agreement, dated August 18, 1993, between Belle, as the owner and licensee of the Casino, and Bally's Casino Holdings, Inc., as the intended manager of the Casino at the time.
The Management Agreement was subsequently amended on June 22, 1994, resulting in an assignment by Bally's Casino Holdings, Inc. of all of its rights under the Management Agreement to Bally's Intermediate Casino Holdings, Inc. Thereafter, on or about January 17, 1995, Bally's Intermediate Casino Holdings, Inc. assigned all of its rights under the Management Agreement to Bally's. The Casino opened for business in July of 1995. From the date the Casino opened for business, and continuing to the present, Bally's has been the manager of the Casino pursuant to the Management Agreement, as amended and assigned. Pursuant to the Management Agreement, Bally's has the exclusive control of and responsibility for the operation of the Casino, for which Belle pays Bally's a monthly management fee.
According to the record, the Board met on March 16, 1999, and ordered that Belle's gross gaming revenues be placed into escrow and subject to disbursement only upon approval by the Board and/or by the Department of Public Safety and Corrections, Office of the State Police. The Board again met on June 15, 1999, at which time it ordered Belle to withhold payment of the monthly management fee to Bally's until further action or order by the Board.[2]
Bally's sought judicial review of the Board's actions alleging that its right to due process had been violated. In its original petition filed on March 26, 1999, Bally's asserted as follows:
Plaintiff is adversely affected and aggrieved by the action of the Board, and substantial rights of plaintiff have been prejudiced by the Board's action. As Casino Manager and part owner of the Belle LLC Casino, plaintiff has a constitutionally-protected *260 contractual and legal right to control the handling and disbursement of gaming revenues from the Casino and to receipt of its management fee and other expense reimbursement, which rights may not be abridged without due process of law.
Subsequently, on June 24, 1999, Bally's filed a first amending petition asserting that the June 15, 1999 order of the Board was "contrary to law, and violated constitutional, statutory, and regulatory provisions" and should be reversed and rescinded.
Thereafter, on July 15, 1999, Bally's filed a motion for a temporary restraining order and a preliminary injunction under the same docket number assigned to its petition for judicial review. Following a hearing on July 16, 1999, the trial court granted a temporary restraining order. According to the minutes from the hearing, the Board was "temporarily restrained, enjoined, and prohibited" from enforcing its June 15, 1999 order. The court also set a date for the hearing on the preliminary injunction, adding that proof at this hearing "may be adduced by verified pleadings, by supporting affidavits, or by proof as in ordinary cases, or any one or all of such methods at the election of either party hereto."
Although counsel for Metro was present in court for the July 16, 1999 hearing on the temporary restraining order, the court prevented him from participating in the hearing, as Metro was not yet a party to the suit. However, according to the minutes from the July 16, 1999 hearing, Metro was allowed to later intervene in the suit. Subsequently, Metro filed a motion requesting that the hearing on the preliminary injunction be "upon proof as in ordinary cases." This motion by Metro was denied by the court in an order signed July 22, 1999, containing the following handwritten notation by the court: "Upon reflection and in the interest of justice, [the Court's previous order of July 16, 1999,] is found to be too broad. The Court therefore orders that evidence adduced at the hearing on preliminary injunction shall be by verified petition and supporting affidavits only."[3]
On July 29, 1999, Bally's filed a second amending petition alleging an unconstitutional taking of its property and property rights by state action without due process of law. Bally's requested a preliminary injunction and the perpetuation of said preliminary injunction through the issuance of a permanent injunction to prevent this unconstitutional taking.
Pursuant to a previous fixing by the court, the hearing on the preliminary injunction was conducted on August 13, 1999. At this hearing, documentary evidence was introduced, and the matter was argued by counsel for all parties. The Board urged a peremptory exception raising the objection of nonjoinder of an indispensable party, an exception that it originally filed on July 23, 1999. Through this exception, the Board argued that Belle was a "party whose presence in this litigation [was] required for a just adjudication of this matter." After hearing the argument of the parties, the trial court took the matter under advisement.
*261 On August 19, 1999, the parties were again before the court for a ruling on the preliminary injunction. In oral reasons given from the bench, the court noted as follows:
The Court believes that the Gaming Control Board has broad authority pursuant to Revised Statute 27:15 to take actions necessary and proper to promote the control of gaming in Louisiana. This Court, though, in reading the transcripts is concerned and does not believe that the Board in issuing the orders of March 16th, 1999, and June 15th, 1999, complied with the procedural requirements necessary to issue those orders.
The court continued, finding that in the interest of "preserving the status quo," it would grant the preliminary injunction.
It was after this ruling that counsel for the Board interjected that the Board had "nothing further to add to this proceeding, and ... [was] in favor of converting this preliminary injunction to a final injunction." With regard to this issue, counsel for Bally's added:
And Bally's Louisiana, Inc., is in agreement and, in essence, filing a joint motion on the part of Bally's and Louisiana Gaming Control Board to convert the preliminary injunction to a permanent injunction and, in essence, convert it to a final judgment on the merits. Because at this time we have no further evidence to put before Your Honor.
Counsel for Metro strongly objected to this motion by the Board and Bally's, urging that any judgment would not only be final as to the Board and Bally's, but would also be final as to Metro. Counsel indicated that although Metro had attempted to conduct discovery prior to the hearing on the preliminary injunction, it was unable to do so and was relying on an eventual hearing on the merits at which time it could present evidence in opposition to the granting of a permanent injunction.
The court then heard arguments from all counsel, after which the following colloquy occurred:
THE COURT: Let me bring something to the attention of all of you, is that this started out as a judicial review. Does this ruling moot the necessity for a judicial review?
MR. LOEB [COUNSEL FOR THE BALLY'S]: At this time we think it does.
MR. DENNIS [COUNSEL FOR THE BOARD]: Absolutely. We think that itI thought that the Court had ruled, frankly, that they were not parties appropriate parties for judicial review and recognized this as a challenge based on due process, their independent standing to challenge based on due process.
THE COURT: The Court had noted that that was going to be a particular problem, and I wanted to give you a heads up on that. And when we discussed this on the record at the in[-]court hearing on the temporary restraining orderthe Court has not made a final ruling on that. But if you're telling me at this point in time this actionyou're going to withdraw your request for a judicial reviewwhat are you telling me?
MR. LOEB: That's exactly what I'm telling you. The judicial review was as to whether the Board had the right to takeorder Bally's [sic] property withheld from them. And as you just ruled on the preliminary injunction, they did not havewell, they actually had the authority, but they violated Bally's [sic] due process rights. The judicial review was as to that.

*262 THE COURT: What's the Board's position on it?
MR. DENNIS: We think that is exactly correct. There is no judicial review.
THE COURT: Very well. The Court is going to then convert the preliminary injunction to a permanent injunction and is going to dismiss the judicial review.
Again, counsel for Metro entered an objection to the court's ruling as follows:
First, I would note the objection to permitting Bally's Louisiana, Inc., to withdraw their petition for judicial review without an opportunity for Metro to file objections to that. The petition for judicial review was the entire basis of this action. As we noted at the time of the T.R.O., if that was notif this preliminary injunction did not arise out of the petition for judicial review, it should have been randomly allotted. It was not randomly allotted. It was filed under the same divisionin the same division and under the same number as the petition for judicial review, which would mean this Court lacks subject matter jurisdiction to hear the preliminary injunction and to convert this matter to a permanent injunction. I would also note an objection to the Court's order that the preliminary injunction be converted to a permanent injunction; that it's over Metro's objection to that, and the court is not authorized by the jurisprudence and law to convert a preliminary injunction to a final judgment over the objection of the parties.
Notwithstanding Metro's objections, the court rendered judgment on August 24, 1999, granting the preliminary injunction, converting the preliminary injunction to a permanent injunction, dismissing the petition for judicial review filed by Bally's, and denying the Board's peremptory exception raising the objection of nonjoinder of an indispensable party. It is from this judgment that Metro has appealed, assigning the following specifications of error:
1) The Trial Court erroneously failed to dismiss BLI's [Bally's] Preliminary Injunction after BLI dismissed its Petition and First Amending Petition seeking judicial review of the agency action.
2) The Trial Court erroneously failed to dismiss BLI's Motion for Temporary Restraining Order and for Preliminary Injunction after the Trial Court found that BLI was without standing to file an administrative appeal of the LGCB's [Board's] June 15, 1999 escrow order to Belle.
3) The Trial Court erroneously changed its original order permitting a full evidentiary hearing limiting proof on BLI's mandatory preliminary injunction to verified pleadings and affidavits only.
4) The Trial Court erred in quashing ex parte, Metro's trial and discovery subpoenas for the hearing on BLI's mandatory preliminary injunction.
5) The Trial Court erred in converting a preliminary injunction into a permanent injunction without a full evidentiary hearing and over the objection of a party.
6) The Trial Court erred in finding that BLI had a constitutionally protected interest.

DISCUSSION
One issue to be decided in this appeal is addressed by Metro in assignment of error number five, i.e., whether a trial court has the authority to convert a preliminary injunction to a permanent injunction over the objection of a party to the proceeding. The answer to this question *263 is a resounding no as is clearly set forth in Louisiana jurisprudence.
A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief. It is designed to and serves the purpose of preventing irreparable harm by preserving the status quo between the parties pending a determination on the merits of the controversy. Freeman v. Treen, 442 So.2d 757, 763 (La.App. 1 Cir.1983). The principal demand, as opposed to the preliminary injunction, is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or decide issues regarding the merits. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979); Hays v. City of Baton Rouge, 421 So.2d 347, 350 (La.App. 1 Cir.), writ denied, 423 So.2d 1166 (1982). Only where the parties have expressly agreed to submit the case for final decision at the hearing on the rule for a preliminary injunction, may the ruling on the preliminary injunction definitively dispose of the merits of the case. See State ex rel. Guste v. City of New Orleans, 363 So.2d 678, 680-681 (La.1978). There is nothing in the record before us to reflect such an express agreement in this case. On the contrary, Metro, a party to the proceeding, has entered an express objection to the conversion of the preliminary injunction into a permanent injunction and to the dismissal of the petition for judicial review filed by Bally's.
As revealed by our review of this record, the trial court's decision to convert the preliminary injunction into a final judgment on the merits was erroneously based on an agreement between Bally's and the Board that there was essentially no further evidence to put before the court. Bally's and the Board also indicated to the court that based on the court's ruling granting the preliminary injunction, there was no need for judicial review of the Board's escrow orders. In spite of Metro's objections to the contrary, the court agreed with Bally's and the Board and granted judgment in their favor granting the preliminary injunction, converting the preliminary injunction to a permanent injunction, dismissing the petition for judicial review, and denying the Board's peremptory exception raising the objection of nonjoinder of an indispensable party.
In the absence of an express agreement between Bally's, the Board, and Metro, the court was without authority to extend the ruling on the preliminary injunction to definitely dispose of the merits of this case. Thus, we agree with Metro's argument that the trial court erred in converting the preliminary injunction into a permanent injunction without a full evidentiary hearing. Consequently, for these reasons and reasons hereinafter enumerated, the preliminary injunction and permanent injunction must be reversed and remanded for further proceedings consistent with this opinion.
Having so determined, another issue raised by Metro that requires discussion in connection with the injunction is set forth in assignment of error number four. Metro asserts that the trial court erred in quashing ex parte its trial and discovery subpoenas issued in connection with the hearing on the preliminary injunction. Based on our review of the record and applicable law and jurisprudence, we agree with Metro's argument in this regard.
In the case of Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d 125 (La.1983), the Louisiana Supreme Court discussed the purposes of discovery:

*264 The basic objectives of the Louisiana discovery process are (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expediate [sic] the legal process by encouraging settlement or abandonment of less than meritorious claims. The discovery statutes are to be liberally and broadly construed to achieve its intended objectives.
Hodges, 433 So.2d at 129 (citations omitted).
According to the record, Metro twice attempted to issue trial and discovery subpoenas in preparation for the hearing on the preliminary injunction. In response to Metro's attempts, Bally's filed ex parte motions to quash the subpoenas requested by Metro, alleging simply that Metro was ignoring the court's order of July 22, 1999, wherein the court determined that "evidence adduced at the hearing on preliminary injunction shall be by verified petition and supporting affidavits only." Subsequently, and without a hearing on these motions, the court signed two separate orders, one on July 27, 1999, and a second on August 3, 1999, quashing all of Metro's subpoena requests.
Pursuant to La.Code Civ. P. art. 963, a court may grant an order ex parte without hearing from the adverse party if the order applied for by written motion is one to which the mover is clearly entitled without supporting proof. If, however, the order applied for is one to which the mover is not clearly entitled, or which requires supporting proof, the motion shall be served on and tried contradictorily with the adverse party. La.Code Civ. P. art. 963.
Article 963 provides support for Metro's argument that it was entitled to notification of the pending motions and a chance to be heard regarding same. There is nothing in the record to suggest that Bally's was clearly entitled to the orders issued by the court without supporting proof. Rather, Metro should have been afforded the opportunity to oppose these motions and ultimately take advantage of the "basic objectives of the Louisiana discovery process." See Hodges, 433 So.2d at 129. Thus, the court's orders of July 27, 1999, and August 3, 1999, are hereby reversed.
Finally, we will address the interrelated issues raised by Metro in its assignments of error numbers one, two, and six. In considering these issues, it is important to understand the unique posture in which this case comes before us from the trial court. From our review of the record, Bally's is an entity adversely affected by an order affecting its property right, that being the escrow order issued by the Board.
Any person adversely affected by an agency action, order, or decision may file an administrative appeal. La. R.S. 27:89. All appeals from any decision of the Board shall be filed within ten days of notice of the decision in the Nineteenth Judicial District Court. La. R.S. 27:26. Further, pursuant to La. R.S. 27:89, appeals from actions of the Board are "in accordance with the provisions of the Administrative Procedure Act" (hereinafter referred to as "LAPA").
This court has recently resolved an ambiguity between the seemingly unlimited right to appeal afforded by La. R.S. 27:26 and the limited right to appeal inferred by the reference to the LAPA made in La. R.S. 27:89 by interpreting these provisions to incorporate the LAPA limitations of appeals to final decisions or orders resulting *265 from adjudication. See Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 99-0863, p. 8 (La.App. 1 Cir. 12/20/00), 774 So.2d 1193. Although the author in the instant case dissented in part and concurred in part in Metro, Metro is now the law of the first circuit, and this author is constrained to follow same.
Under Metro, Bally's may only appeal from final decisions or orders resulting from an adjudication or from a final decision or order that affects a constitutionally-protected property right as recognized by Art. I, §§ 2 and 4 of the Louisiana Constitution. Metro, 99-0863 at 4, 774 So.2d at 1197; Delta Bank & Trust Co. v. Lassitter, 383 So.2d 330, 333 (La.1980); First National Bank of Abbeville v. Sehrt, 246 So.2d 382, 384 (La.App. 1 Cir.), writ refused, 258 La. 909, 248 So.2d 334 (La. 1971). Certainly, the Board's order which directed that funds owned by Bally's be escrowed affected a constitutionally-protected property right of Bally's. Thus, Bally's was entitled to due process and had standing and the right to appeal the Board's escrow order.
In both its original and first amending petition, Bally's requested a stay order, which requests were denied by the Nineteenth Judicial District Court. Subsequently, Bally's filed a motion for a temporary restraining order and a preliminary injunction. Bally's later filed a second amending petition alleging an unconstitutional taking of its property and property rights by state action without due process of law. In its second amending petition, Bally's requested a preliminary injunction and the perpetuation of said injunction through the issuance of a permanent injunction to prevent this unconstitutional taking.
Pursuant to La. R.S. 49:964, the agency may grant, or the reviewing court may order, a stay ex parte upon appropriate terms. Further, the court may require that the stay be granted in accordance with the local rules of the reviewing court pertaining to injunctive relief and the issuance of temporary restraining orders. La. R.S. 49:964 C. However, a stay order is not the same thing as a permanent injunction. In the instant case, the reviewing court originally denied the stay orders and then later, based upon the second amending petition, converted this proceeding or consolidated this proceeding with a petition for injunction and permanent injunction.
Any person adversely affected by a final agency action, order, or decision of the Board[4] may file an administrative appeal. La. R.S. 27:89. Generally, administrative remedies must be exhausted before a litigant is entitled to judicial review. However, this right to bring an administrative appeal does not preclude or negate the litigant's right to seek injunctive relief where irreparable injury might otherwise result. See Haspel & Davis Milling & Planting Co., Ltd. v. Board of Levee Commissioners of Orleans Levee District, 98-1664, p. 10 (La.App. 4 Cir. 3/31/99), 732 So.2d 113, 118, writ denied, 99-1248 (La.6/18/99), 745 So.2d 29; State Board of Education v. Anthony, 289 So.2d 279, 284 (La.App. 1 Cir.1973), writs denied, 292 So.2d 246 (La.1974). The request for injunctive relief should be addressed in a proceeding separate and apart from the *266 petition for judicial review and tried by a trial court of original jurisdiction.
As set forth in the following pertinent statutes, all appeals from decisions of the Board shall be reviewed solely on the record. Louisiana Revised Statute 27:26 reads as follows:
All appeals from any decision of the board shall be filed within ten days of notice of the decision in the Nineteenth Judicial District Court and shall be reviewed solely on the record.
Further, La. R.S. 49:964(F) of the Louisiana Administrative Procedure Act provides:
The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.
In the instant case, the trial court was acting as an appellate court in reviewing the Board's orders, rather than in its capacity of a court of original jurisdiction. Thus, it was confined to a review of the record. However, by considering the request by Bally's for an injunction and the original petition for judicial review in the same proceeding, the trial court was acting not as an appellate court, but rather in its capacity of a court of original jurisdiction. Thus, consolidating the injunction hearing with the petition for judicial review was inappropriate.
With regard to the court's dismissal of the petition for judicial review, we note that La. R.S. 27:15 sets forth the authority and responsibilities of the Board. According to La. R.S. 27:15 B(5), the Board is required to organize and conduct hearings as provided for in La. R.S. 27:25. Louisiana Revised Statute 27:25 B(1) provides, in pertinent part, "[a]ny matter which is disputed or contested shall be heard by a hearing officer." Further, La. R.S. 27:25 B(2) and (3) set forth the minimal requirements for the hearing as follows: 1) the receipt of sworn testimony, including by deposition; 2) an opportunity for any interested party to be heard; 3) an orderly, predictable, and timely docketing system; and 4) the submission of a report by the hearing officer containing the record of the hearing, including all submissions, findings of fact, conclusions of law, and decisions.
Although Bally's disputed the escrow orders issued by the Board, it was denied the required hearing pursuant to La. R.S. 27:25. Thus, we reverse the judgment of the trial court insofar as it dismissed the petition for judicial review filed by Bally's and remand the matter to the trial court with an order to remand the petition for judicial review to the Board for a hearing in accordance with La. R.S. 27:25.

CONCLUSION
For the reasons assigned, we hereby reverse the August 24, 1999 judgment both as to the trial court's granting of a preliminary injunction and converting the preliminary injunction into a permanent injunction. We order that the request by Bally's for injunctive relief be severed from the petition for judicial review, remanded to the trial court, and randomly re-allotted for further proceedings consistent with this opinion. We reverse the July 27 and August 3, 1999 orders of the trial court quashing Metro's subpoena requests.
Further, we reverse that portion of the August 24, 1999 judgment of the trial court whereby the court dismissed the petition for judicial review filed by Bally's. The matter is remanded to the trial court with an order to remand the petition for judicial review to the Board for a hearing in accordance with La. R.S. 27:25. Appeal costs in *267 the amount of $3,530.23 shall be borne by the Board.
REVERSED AND REMANDED.
PRELIMINARY AND PERMANENT INJUNCTION REVERSED. INJUNCTION PROCEEDING SEVERED AND REMANDED TO TRIAL COURT FOR RANDOM REALLOTMENT AND FURTHER PROCEEDINGS. DISMISSAL OF PETITION FOR JUDICIAL REVIEW REVERSED AND REMANDED TO TRIAL COURT WITH INSTRUCTIONS.
NOTES
[1] Judge Jules D. Edwards, III, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] As evidenced by the Notice Of Violation And Hearing and the affidavits of Hillary J. Crain, Chairman of the Board, and Lt. Dane Morgan, Supervisor of the Louisiana State Police, Riverboat Gaming Division, there was apparently some question as to whether Belle had complied with gaming statutes and administrative regulations regarding assignments of interests, including management contracts. This concern by the Board resulted in the escrow orders that are at issue now.
[3] It was based on this order that the trial court subsequently granted the Board's ex parte requests to quash all trial subpoenas that were issued by Metro in contemplation of the hearing on the preliminary injunction. In its motion to quash Metro's subpoenas, Bally's argued that "[b]y requesting the issuance of the subpoenas and subpoenas duces tecum and/or requesting that they apply to the preliminary injunction hearing, Metro is ignoring this Court's emphatic Order concerning the proof requirements for the preliminary injunction hearing."
[4] Although La. R.S. 27:89 refers to the "commission," which was the Riverboat Gaming Commission, La. R.S. 27:31 transfers all powers, duties, functions, and responsibilities of the various regulatory entities to the Board and states that "[a]ny reference in rules, laws, and documents to or any designation by any law or contract or other document of any entity whose functions are transferred to the board shall be deemed to refer tot the board...." La. R.S. 27:31(B), (C).