879 So.2d 186 (2004)
Jeffrey "Jeff" MCCURLEY, Elizabeth McCurley, George Powers, Gloria Powers, Curtis Netterville, Carolyn A. Netterville, Jimmy Hawkins, Brenda D. Hawkins, Jerry D'Antoni, Carolyn D'Antoni, Robert "Bobby" Hano and Yvonne Hano
v.
Johnny BURTON and Sherry K. Burton.
No. 2003 CA 1001.
Court of Appeal of Louisiana, First Circuit.
April 21, 2004.
*187 Ronnie J. Berthelot, Baton Rouge, Lonny A. Myles, Zachary, Counsel for Plaintiffs/Appellees George Powers, Gloria Powers, Curtis Netterville, Carolyn A. Netterville, Jimmy Hawkins, Brenda D. Hawkins, Jerry D'Antoni, Carolyn D'Antoni, Robert "Bobby" Hano and Yvonne Hano.
Dorothy F. Jackson, Baton Rouge, Counsel for Defendants/Appellants Johnny Burton and Sherry K. Burton.
Before: FOIL, FITZSIMMONS, and GAIDRY, JJ.
*188 GAIDRY, J.
Defendants/appellants, Johnny and Sherry K. Burton, appeal the grant of a permanent injunction based on a servitude of passage in favor of plaintiffs/appellees, George W. Powers, Gloria Powers, Curtis Netterville, Carolyn A. Netterville, James "Jimmy" Hawkins, Brenda Hawkins, Jerry D'Antoni, Carolyn D'Antoni, Robert "Bobby" Hano, and Yvonne Hano.[1] Following this court's review of the record and relevant law, we affirm in part, amend in part, and vacate in part.
On July 16, 2002, plaintiffs alleged the continuous and uninterrupted possession of the right of access to a portion of the property owned by the Burtons pursuant to a servitude of passage; the dedication of a servitude of passage for use by plaintiffs pursuant to various surveys and acts of sale; continuous and uninterrupted possession in excess of one year; and that failure to recognize the servitude of passage would cause the land to become enclosed. The plaintiffs requested a temporary restraining order, preliminary injunction, permanent injunction, and damages. The Burtons reconvened, asking that they be declared the owners of the disputed thirty-foot strip and requesting damages for wrongful issuance of the temporary restraining order, as well as attorney fees.
After a hearing on the preliminary injunction, the trial court rendered judgment, ordering a permanent injunction against the Burtons and dismissing the Burtons' reconventional demand. The court subsequently denied the Burtons' Motion for New Trial, and this appeal followed.
The Burtons assert that the trial court erred by: (1) issuing a permanent injunction against them following the hearing on the preliminary injunction, where the parties did not stipulate to a trial on the merits; (2) finding that a servitude existed upon their property in favor of the plaintiffs who did not purchase their property from them or their ancestors in title; (3) finding that a servitude existed upon their property in favor of the plaintiffs based upon a map that contained a servitude that could not be tied to their property and was not used as a reference by the plaintiffs' expert witness in conducting a survey of the property; (4) dismissing their reconventional demand where the plaintiffs' action was in the form of a possessory action and their demand was clearly a petitory action seeking declaratory relief, and where the plaintiffs failed to show proof of ownership by title or by acquisitive prescription of thirty years (in the absence of good faith and title).

PERMANENT INJUNCTION
This court initially addresses the grant of a permanent injunction following the hearing on the plaintiffs' motion for preliminary injunction. At the commencement of the hearing on August 1, 2002, the district court judge properly identified the matter as a rule for preliminary injunction. At the conclusion of the hearing on the preliminary injunction, the court reporter noted that the matter was taken under advisement. Thereafter, in written reasons for judgment dated November 13, 2002, the court again acknowledged that the matter had come for hearing on whether a preliminary injunction should issue barring the defendants from erecting a fence and gate on a disputed servitude. At the conclusion of the written reasons, the court recognized the existence of a servitude; however, it then spontaneously pronounced that a permanent injunction *189 would be granted to enjoin the defendants from building the proposed gate and fence across the gravel road that comprised part of the servitude of access. On December 3, 2002, a judgment granting the permanent injunction was signed.
In the absence of an express agreement between the parties, the court lacks the authority to convert a preliminary injunction to a permanent injunction. Bally's Louisiana Inc. v. Louisiana Gaming Control Board, 99-2617, p. 8 (La. App. 1 Cir. 1/31/01), 807 So.2d 257, 263, writ denied, XXXX-XXXX (La.1/11/02), 807 So.2d 225. The principal demand for a permanent injunction can only be definitively disposed of after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction might have addressed issues on the merits. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979); Hays v. City of Baton Rouge, 421 So.2d 347, 350 (La.App. 1 Cir.), writ denied, 423 So.2d 1166 (1982).
The requisite consent by the parties to submit the case for a final decision of the permanent injunction is not found in the record in this case. Indeed, the first indication that the court was unilaterally converting the hearing for a preliminary injunction into a judgment of permanent injunction surfaced more than three months after the hearing on the preliminary injunction had ended. The court exceeded the parameters of its authority; therefore, the permanent injunction must be vacated. However, in the interest of judicial economy and to save litigants additional costs and time, the district court judgment is hereby reformed to a grant of a preliminary injunction to reflect the procedural posture of the proceedings that transpired.[2]

PREDIAL SERVITUDE OF PASSAGE
The parties in the instant litigation do not dispute the existence of a thirty-foot servitude on property owned by Bobby and Betty Caston to the north of the Burtons' land; however, that thirty-foot servitude of passage was never utilized. Instead, it is the gravel road immediately south of the Caston property on the northern end of the Burtons' property that is in dispute. The Burtons claim that the gravel roadway is their private "driveway;" the neighboring plaintiffs allege it is subject to a thirty-foot servitude of passage in their favor.
A plaintiff seeking the issuance of a preliminary injunction bears the burden of establishing a prima facie case by a preponderance of the evidence. A prima facie showing requires a plaintiff to demonstrate that he will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. General Motors Acceptance Corporation v. Daniels, 377 So.2d 346, 348 (La.1979); Malek v. Yekani-Fard, 451 So.2d 669, 673 (La.App. 1 Cir.1984).
When a defendant in a possessory action asserts ownership in the property, the action is automatically converted to a petitory action, and the defendant is considered as having judicially confessed plaintiff's possession. La. C.C.P. art. 3657. The party found out of possession bears the burden of proof in the petitory action. La. C.C.P. art. 3653. In order to prevail *190 against a party in possession, a party claiming ownership must prove title good against the world. Chevron U.S.A., Inc. v. Bergeron, 551 So.2d 746 (La.App. 1 Cir.) writ denied, 553 So.2d 465 (La.1989). Because the Burtons asserted their ownership of the disputed property, they bear the burden of proving title good against the world.
Louisiana Civil Code article 705 defines a servitude of passage as follows:
The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate.
A predial servitude of passage may be established via a demonstration of title. La. C.C. arts. 699; 708; 722. At the hearing on the motion for a preliminary injunction, plaintiffs introduced into evidence an act of sale dated August 13, 1957, with an attached plat dated August 15, 1957. A copy of the recorded plat is attached to the end of this opinion. The plat was prepared in conjunction with the August 13, 1957 act of sale from Louis Carles to Augustine Carles of a three-acre portion of his 81.73-acre tract of land to the east of the Burtons' property.
Woodrow Kerr owned the Burtons' property, as well as the Castons', in 1957. On the plat accompanying the 1957 act of sale is written that a "sixty foot servitude for access from property of Woodrow Kerr is hereby dedicated." This statement on the plat granting the servitude is signed by Woodrow Kerr. The plat depicts the existence of two adjacent thirty-foot servitudes of passage which connect to a proposed sixty-foot street on the adjoining property.
In a May 26, 1964 act of sale, Woodrow Kerr sold the property currently owned by the Burtons (which was identified as "Tract `C'" in an accompanying plat dated May 16, 1964) to Earl and Minnie Kennedy. The act of sale contained the following statement: "Said Tract `C' being subject to a 30-foot access way across the northernmost 196.15 feet width which is adjacent to the Louis J. Carles property to the north." The 1964 plat also provided, "The thirty foot wide drive along the north line of tracts `B' and `C' shall be dedicated as a permanent access way to tracts `B' and `C'."
Thereafter, Earl Kennedy's widow, Minnie Bowen Kennedy Carpenter, sold the land to Alfred and Gladys Sanders on January 15, 1969. The 1969 act of sale contained the identical language subjecting tract "C" to a thirty foot access way and referencing the 1964 survey.
On April 22, 1970, Alfred and Gladys Sanders sold tract "C" to Johnny and Sherry Burton. As with the prior sales, the act of sale referenced the 1964 plat and confirmed that the tract was subject to "a 30 foot access way across the northernmost 196.15 feet width, which is adjacent to the Louis J. Carles property on the north."
Thus, the evidence substantiates the existence of a thirty-foot servitude of passage located on the Burtons' property granted by Woodrow Kerr in the 1957 plat. Although the 1957 act of sale involved only a three-acre tract of land, the attached plat in which the servitude was created depicts a servitude for passage connecting to a proposed sixty-foot street on the adjoining property. It is well settled that where there is a discrepancy between a plat and an act of sale, the plat controls. See Triangle Development, Inc. v. Burns, 469 So.2d 29 (La.App. 1 Cir. *191 1985). Accordingly, a thirty-foot servitude of passage across the northern portion of the Burton's property was created in 1957 in favor of the plaintiffs. The grant of a preliminary injunction in favor of plaintiffs is affirmed.

POSSESSORY ACTION
In its reasons for judgment, the district court judge found that the plaintiffs and their ancestors in title had continually maintained possession through utilization of the servitude of passage in excess of one year prior to the actions of the Burtons. When an owner of a dominant estate, such as the plaintiffs, is disturbed in the possession of the servitude, he or she may pursue the possessory action. See La. C.C.P. art. 3655-3671. Pursuant to La. C.C.P. art. 3655, "[t]he possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." However, the petitory and possessory actions may not be cumulated in the same suit. La. C.C.P. art. 3657. If a plaintiff attempts to cumulate or plead in the alternative, the possessory action is waived in favor of the petitory action. Id.; Harry Bourg Corporation v. Verrett, 633 So.2d 285, 286 (La.App. 1 Cir.1993). If a defendant brings a separate petitory action, he is considered as having judicially confessed plaintiff's possession. Whenever the defendant in a possessory action raises or interjects the issue of ownership or title through the answer, the possessory action is converted into a petitory action. La. C.C.P. art. 3657. Since the defendants reconvened to assert their ownership of the disputed property, the plaintiff's possessory action was converted to a petitory one, and the possessory action is vacated without prejudice.

RECONVENTIONAL DEMAND
The Burtons seek a reversal of the district court's refusal to grant damages and attorney fees due to the erroneous grant of the temporary restraining order. As we have found that the plaintiffs acquired a servitude of passage across the Burtons' property by virtue of title, we find no error in the grant of a temporary restraining order and preliminary injunction in favor of the plaintiffs. Accordingly, we do not find that the Burtons have been damaged by the court's actions; nor are they entitled to attorney fees, which can only be bestowed where authorized by statute or contract. See Brier Lake, Inc. v. Jones, 97-2413, p. 16 (La.4/14/98), 710 So.2d 1054, 1061.

DECREE
The district court's grant of a permanent injunction based on a servitude of passage in favor of plaintiffs is affirmed as amended by this court. The possessory action is vacated without prejudice. The district court's denial of the reconventional demand for damages and attorney fees is affirmed. Costs associated with this appeal are to be shared equally among the parties to this appeal.
AFFIRMED, IN PART; AMENDED, IN PART; VACATED, IN PART.
*192 
*193 FITZSIMMONS, J., dissents, in part, and assigns reasons.
FITZSIMMONS, Judge, dissenting, in part, with reasons.
I respectfully dissent, in part, from the majority's affirmation of the existence of a predial servitude of passage. Pursuant to the 1957 act of sale and accompanying plat for the sale of property by Louis Carles to Augustine Carles, the evidence substantiates the existence of a thirty-foot servitude located on the Burtons' property in favor of the three-acre tract of land purchased by Augustine Carles and later identified as "Tract `A'." Only the current owners of the property that comprised all, or part,[1] of the three-acre tract sold to Augustine Carles in 1957 would be entitled to a conventional servitude of passage based on title.[2] The sales in 1964, 1969 and 1970 referred to a survey map of 1964, in which the dedicated permanent access ways to Tracts "B" and "C" do not entail properties owned by plaintiffs. Thus, the trial court legally erred in its attribution of a thirty-foot servitude across the northern portion of the Burtons' property in favor of all plaintiffs to the action.
Moreover, the chain of title for the three acres that comprise the dominant estate is not readily ascertainable from the submitted evidence presented at the motion for preliminary injunction. In 1971, in an act of partition, Jimmy Dawes and Jewell Bourke transferred to Louis J. Carles a 2.778-acre tract of land identified as "Tract `A,'" which land was situated in the same location as the property purchased by Augustine Carles in 1957, albeit slightly smaller in size. Thereafter, in 1985, "Tract `A'" was subdivided into "A-1," "A-2," and "A-3." Thus, it appears from the submitted evidence that a small portion of the adjacent lot C-1 was also a part of the original 3-acre tract.
Prima facie support that Bobby and Yvonne Hano are the owners of Lot "A-1" was authenticated pursuant to an Act of Sale dated December 16, 1996. An exhibit demonstrating an act of sale to George and *194 Gloria Powers on February 1, 1993 provides prima facie proof of their ownership of Lot A-2. (N. Jeff McCurley, who was dismissed as a party, testified that he was the owner of Lot "A-3.") For purposes of the grant of a preliminary injunction, the evidence presented on behalf of the Hanos and Powers clearly satisfied their burden to demonstrate that they would prevail on the merits to establish the existence of a servitude by title.
Additionally, Curtis Netterfield testified that his property was located in Tract "C." No supporting documentation was presented, except for a handwritten notation on one of the exhibits that placed Mr. Netterfield's property adjacent to the McCurleys' property. The evidence of ownership of a portion of the dominant three-acre tract of land was significantly weaker than the documentation offered by the Hanos and Powers; however, for the purpose of presenting prima facie proof of ownership of the remaining segment of the original three-acre tract, there was no error in the trial court's finding that title had been established. Finally, notwithstanding the existence of a thirty-foot servitude to the north of the contested land, the district court's finding of irreparable harm does not appear to be manifestly erroneous because the parties testified that the servitude to the north was impassable at the time of the hearing.
Accordingly, it is submitted that the preliminary injunction in favor of Robert "Bobby" and Yvonne Hano, George and Gloria Powers, and Curtis and Carolyn Netterville was properly affirmed. The grant of a preliminary injunction pursuant to a servitude of passage premised on title in favor of James "Jimmy" Hawkins, Brenda Hawkins, Jerry D'Antoni, and Carolyn D'Antoni should be reversed.

Servitude Established by Acquisitive Prescription
A conventional servitude may be established by juridical act, prescription, or destination of the owner. La. C.C. art. 654. A predial servitude premised on acquisitive prescription requires the showing of peaceable and uninterrupted adverse possession for ten years in good faith and by just title. La. C.C. arts. 742 and 3475. Adverse possession constitutes an unauthorized use that infringes on the ownership of the servient estate. A.N. Yiannopolous, Requisite Possession for Prescription § 138 Louisiana Civil Law Treatise, 399 (1997). Just title is a juridical act sufficient to transfer ownership or another real right. It must be written, valid in form, and filed for registry in the conveyance records of the parish where the immovable is situated. La. C.C. arts. 742 and 3483.
Mr. Hawkins testified that for twenty years he had been under the impression that the gravel road was available to, and utilized by, all the neighbors for access to their homes. He also stated that he had graded the disputed roadway five to six times a year for the past twenty years, and he had cleaned the ditch three times with a grader box. It was stipulated that Mr. Hano's testimony would be the same as that of Curtis Netterville. Mr. Netterville stated that he had utilized the gravel road for access from the time that he purchased the home. Mr. D'Antoni testified that he had not been under the impression that Mr. Burton claimed the gravel road as his private driveway when he bought that particular tract of land in 2001. Mr. Burton had never stopped him or family members from using the gravel road. Moreover, Mr. D'Antoni had contributed money to place gravel and limestone on the disputed access way many times for at least ten years. Mr. Burton testified that he had *195 always allowed his neighbors and parties making deliveries to his neighbors to use his roadway until 2002.
Although peaceable and uninterrupted use of the disputed thirty-foot servitude might have been satisfied for prima facie proof, the parties have failed to establish prima facie proof of adverse possession. Moreover, the evidence does not give credence to the existence of a valid title of servitude of passage by the Hawkins or D'Antonis. Thus, the court manifestly erred in its attribution of acquisitive prescription of a servitude of passage by plaintiffs.
NOTES
[1] On April 7, 2003, plaintiffs, Jeffrey and Elizabeth McCurley, were granted a motion to have their names removed from the petition and caption.
[2] Louisiana Code of Civil Procedure article 3612 provides that "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction." A party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. Country Club of Louisiana Property Owners Association, Inc. v. Dornier, 96-0898, p. 2 n. 1 (La. App. 1 Cir. 2/14/97), 691 So.2d 142, 144 n. 1.
[1] Pursuant to La. C.C. art. 652, the "servitude is due to the whole of the dominant estate and to all parts of it; if this estate is divided, every acquirer of a part has the right of using the servitude in its entirety."
[2] Additional acts of subdivision in the record, primarily by Louis Carles for adjacent property, were not dispositive. In 1971, there occurred a sale and re-subdivision of the Carles tract to the east of the Burtons' property. The significance of that transaction is that plaintiffs ultimately owned parts of the subdivided property, and they accessed their property via the disputed 30' servitude on the Burtons' property. The 1971 plat indicates only a "30' access servitude's servitude." It is not clear whether the servitude falls on the Burtons' property or the property formerly owned by Louis J. Carles to the north, which was owned by Thomas Charlton at the time of the trial. A subsequent survey performed for Louis J. Carles, dated June 4, 1976, also shows a "30' access servitude," but fails to delineate the exact location.

On June 27, 1985, Louis J. Carles again re-subdivided a portion of his property into three lots that were purportedly owned by Hano, Power and McCurley at the time of the trial. The 1985 plat refers to an "exist 60' access serv." The plat further states: "The access servitude shown on this plat is hereby dedicated (if not previously dedicated) as an access to lots A-1, A-2 & A-3." Louis Carles no longer owned the land on the north side of the disputed servitude. Moreover, the language is somewhat ambiguous because other access servitudes appeared on the plat.
A survey performed for Jerry D'Antoni and Augustus D'Antoni on July 10, 1985, whose access to property was also via the disputed roadway, reflects the access as "exist 30' private access servitude."
Finally, on January 27, 1986, another re-subdivision plat of Tracts "C" and "D-1-A" of the Louis J. Carles property into Lots C-1, C-2, D-1-A-1 & D-1-A-2 ... for Owen Prestridge & Jerry Don D'Antonishows "exist. 30' priv access serv. to Kerr Rd."