970 So.2d 985 (2007)
CITY OF BATON ROUGE Parish of East Baton Rouge
v.
STATE of Louisiana, Through the Louisiana DEPARTMENT OF SOCIAL SERVICES, and the Governor's Office of Homeland Security and Emergency Preparedness.
No. 2007 CA 0005.
Court of Appeal of Louisiana, First Circuit.
September 14, 2007.
*987 E. Wade Shows, Gwendolyn K. Brown, Ashley W. Beck, Baton Rouge, Counsel for Plaintiff/Appellant, City of Baton Rouge/Parish of East Baton Rouge.
Charles C. Foti, Jr., Attorney General, Uma M. Subramanian, Cherie Lato, Myers O. Namie, Assistant Attorney Generals, Baton Rouge, Counsel for Defendants/Appellees, State of Louisiana through the Department of Social Services and the Governor's Office of Homeland Security and Emergency Preparedness.
Before: CARTER, C.J., PETTIGREW and WELCH, JJ.
CARTER, C.J.
The City of Baton Rouge/Parish of East Baton Rouge ("City/Parish") appeals a trial court judgment dismissing its petition for declaratory judgment and injunctive relief. The City/Parish sought to enjoin the State of Louisiana ("State") from proceeding with its plan to house registered sexual offenders at the Joint Emergency Services Training Center (JESTC) in East Baton Rouge Parish in the event of a declared state of emergency. For the reasons that follow, we affirm the judgment in part, vacate in part, and remand the matter for further proceedings.

FACTUAL AND PROCEDURAL HISTORY
Act 285 of the 2006 regular legislative session went into effect on August 15, 2006. The Act was the legislature's effort to address problems relative to the housing of registered sexual offenders in the event of a declared state of emergency, such as those following Hurricanes Katrina and Rita. The stated purpose of the Act was to "amend and reenact R.S. 15:545(A) and to enact 29:726(E)(14)(c), (d), (e), and (f) . . . to prohibit registered sexual offenders from being housed with other evacuees during a declared state of emergency or after a declared state of emergency." More particularly, LSA-R.S. 29:726 now provides that a "registered sexual offender shall not knowingly be housed or sheltered in the same area with other evacuees" and that the "offender, if possible, shall be provided shelter or housing in an alternative shelter separate and apart from the general population of evacuees." LSA-R.S. 29:726 E(14)(c).
Following passage of the Act, the Governor's Office of Homeland Security and Emergency Preparedness ("Governor's office") together with the Department of Social Services concluded that the JESTC site, located on state-owned land in East Baton Rouge Parish, would be the designated shelter site for registered sexual offenders in the event of a declared state of emergency. The JESTC site encompasses a sizable amount of property *988 in Zachary, Louisiana, and is under the operation and control of the Louisiana State Police. In the event the JESTC site is utilized as a shelter for registered sexual offenders, it would potentially house approximately 238 individuals.
Dissatisfied with the State's designation of the JESTC site as the location for the proposed shelter, the Metropolitan Council of East Baton Rouge Parish passed a resolution in October 2006 amending the Code of Ordinances of the City of Baton Rouge and the Parish of East Baton Rouge to add Ordinance 15:8. Ordinance 15:8 prohibits any person from locating or operating "an emergency facility dedicated exclusively for the housing or sheltering of registered sexual offenders during a declaration of emergency in East Baton Rouge Parish."
Following the passage of Ordinance 15:8, officials from the Governor's office met with Mayor-President Melvin L. "Kip" Holden, Metropolitan Councilman Wayne Carter, and other City/Parish officials. According to the City/Parish, "the Governor's office agreed to gather more information and report back regarding how the State [had] selected the JESTC site as the designated shelter for registered sex offenders." Several days later, the Governor's office informed the City/Parish that it was standing by its decision to use the JESTC site as a shelter for registered sexual offenders in the event of a declared state of emergency.
In response, the City/Parish filed a "Petition for Declaratory Judgment and for Injunctive Relief" against the State, through the Governor's Office and through the Department of Social Services. Therein, it sought: (1) a declaratory judgment stating that the JESTC site is in the same "area" as the other housing for evacuees, and thus, its designation as a shelter for registered sexual offenders constituted a violation of Act 285; (2) a declaratory judgment stating that the State's designation of the JESTC site for registered sexual offenders further constitutes a violation of Ordinance 15:8; and (3) the issuance of a preliminary and permanent injunction to enjoin the State from housing registered sexual offenders at the JESTC site or "from taking steps in furtherance of that end."
Attached to the petition was an order requesting that defendants show cause why the plaintiff's request for a preliminary injunction should not be granted. On October 24, 2006, the trial court signed the order setting the matter for hearing on November 8, 2006, presumably to comport with the temporal requirements set forth in LSA-C.C.P. art. 3602.[1]
The record reflects that upon the commencement of the November 8 hearing, the following exchange took place between the parties and the court:
City/Parish Attorney: We have agreed to a stipulation as to the authenticity and admissibility of certain maps . . . to assist the Court in the presentation of the case. Likewise, we have  and just so we can get the record straight, I had appreciated that the matter before the Court today was a hearing on the entire matter, the declaratory judgment, permanent injunction, and that was my understanding. Since that time, I understand that the State is not willing to move forward in that regard, but merely wants to have this in terms of a hearing on a preliminary injunction.

*989 State's Attorney: That's correct, Your Honor. The plaintiffs [sic] in their [sic] petition request a 3602 hearing, a preliminary injunction hearing. It was our understanding to set this as soon as possible to have that summary proceeding.
The Court: Well, gentlemen, let me state for the record, also, my position is that I believe in the earlier discussions, we indicated that this matter would all be heard at the same time. I had a telephone conversation with the lawyers a couple of days ago, and at that time I started to say we agreed, but I agreed and decided that we were just going to have a preliminary injunction today. And I indicated that to the attorneys during that telephone conversation. I also suggested to the attorneys that they pare down their witness list that had been furnished to the Court. And it is my understanding that that has been done. . . .
Thus, the scope of the hearing was limited to the City/Parish's request for a preliminary injunction.
At the conclusion of the hearing, the trial court indicated that it would take the matter under advisement. After issuing written reasons[2], the trial court signed a judgment on November 30, 2006, that provided, in pertinent part, as follows:
This matter came on pursuant to regular assignment on the 8th day of November, [sic] 2006 on a hearing for Preliminary Injunction filed by the City of Baton Rouge, Parish of East Baton Rouge.
* * *
After hearing testimony and reviewing the pleadings, the record and memoranda of all parties and considering the law and evidence to be in favor of defendant State of Louisiana through the Louisiana Department of Social Services and the Governor's Office of Homeland Security and Emergency Preparedness,
IT IS ORDERED, ADJUDGED AND DECREED that the petition of the City of Baton Rouge and Parish of East Baton Rouge for declaratory judgment and permanent injunction is dismissed with prejudice, and the petitioner's request for costs and attorney fees is denied all at the cost of the petitioner City of Baton Rouge, Parish of East Baton Rouge.
From this judgment, the City/Parish appeals, asserting that the trial court erred in denying its request for a preliminary injunction and in dismissing its demand for a declaratory judgment and permanent injunctive relief.[3] We now address each of these arguments in turn.

LAW AND DISCUSSION
I. Preliminary Injunction
As an initial matter, we note that the judgment at issue herein fails to specifically *990 address the City/Parish's request for a preliminary injunction. Generally, when a judgment is silent as to any part of a demand or any issue that was litigated, that issue or demand is deemed rejected. Best Fishing, Inc. v. Rancatore, 96-2254 (La.App. 1 Cir. 12/29/97), 706 So.2d 161, 163. Thus, it must be presumed that the trial court denied the City/Parish's request for a preliminary injunction. See Barham & Arceneaux v. Kozak, 02-2325 (La.App. 1 Cir. 3/12/04), 874 So.2d 228, 241, writ denied, 04-0930 (La.6/4/04), 876 So.2d 87. On appeal, the City/Parish contends that the trial court erred in so ruling.
Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury, loss, or damage if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. Sorrento Companies, Inc. v. Honeywell Int'l, Inc., 04-1884 (La.App. 1 Cir. 9/23/05), 916 So.2d 1156, 1163, writ denied, 05-2326 (La.3/17/06), 925 So.2d 541. A showing of irreparable harm is not required in cases where the conduct sought to be restrained is unlawful, as when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law. See Jurisich v. Jenkins, 99-0076 (La.10/19/99), 749 So.2d 597, 599. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270 (La.App. 1 Cir. 3/24/05), 906 So.2d 660, 663.
A. Alleged Unlawful Conduct
The City/Parish maintains that an application of the controlling principles of law to the facts adduced at the hearing establishes its entitlement to a preliminary injunction. It maintains that because the conduct that it seeks to enjoin is unlawful, it is relieved from demonstrating irreparable harm. (Although, it maintains that it made a prima facie showing of irreparable harm nonetheless.) Specifically, the City/Parish contends that the State's designation of the JESTC site, as a shelter for registered sexual offenders, violates LSA-R.S. 29:726 and Ordinance 15:8.
Violation of LSA-R.S. 29:726
As of November 2006, there were approximately one thousand four hundred evacuees still living in the Renaissance Village Federal Emergency Management Agency group site, which is located approximately 6.5 driving miles from the JESTC site. Miracle Place Church, which housed approximately 3,500 evacuees following Hurricanes Katrina and Rita, is located approximately 7.9 miles driving distance from the site and Bethany World Prayer Center, which housed around 1,700 evacuees, is located approximately 10.6 miles driving distance from the JESTC site.
The City/Parish contends that the proximity of the JESTC site to the Renaissance Village group site and other housing for evacuees renders it within the same "area" as that term is contemplated by LSA-R.S. 29:726 E(14)(c); therefore, its designation and use as a shelter for registered sexual offenders is a violation of that statute's provisions. The State counters that the term "area" cannot be interpreted as broadly as the City/Parish proposes.
The interpretation of a law begins with the language of the statute itself. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. When the words of a law are ambiguous, their meaning must be sought by examining *991 the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. Moreover, laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13. With these precepts in mind, we examine the pertinent language found in LSA-R.S. 29:726 E, which provides, in part, as follows:
(14) (c) Notwithstanding the provisions of R.S. 15:542 to the contrary and notwithstanding any other provision of law to the contrary, a proposed shelter component in the homeland security and state emergency operations plan effective during a declared state of emergency shall include the following requirements:
(i) That a registered sexual offender shall not knowingly be housed or sheltered in the same area with other evacuees.
(ii) That a registered sexual offender, if possible, shall be provided shelter or housing in an alternative shelter separate and apart from the general population of evacuees.
(d) Notwithstanding the provisions of R.S. 15:542 or any other provision of law to the contrary, a proposed shelter component in the homeland security and state emergency operations plan shall include after the termination of the declared state of emergency, the following requirements:
(i) That a registered sexual offender shall not knowingly be housed or sheltered in shelters, hotels, Federal Emergency Management Agency trailer parks, or any other housing funded by the Federal Emergency Management Agency where the general population of evacuees is staying.

(ii) That a registered sexual offender shall be provided shelter or housing in an alternative location separate and apart from the shelters, hotels, or Federal Emergency Management Agency trailer parks or any other housing funded by the Federal Emergency Management Agency where the general population of evacuees are staying.
(e) During and after termination of a declared state of emergency, any person, official, or personnel of a federal or state charitable organization or institution who becomes aware of the fact that there is a registered sex offender being housed in any shelter facility shall be required to notify and disclose to the sheriff of the parish and the chief of police of the municipality the identity of any registered sex offender housed, even in a separate area, in the shelter facility.

(Emphasis supplied.)
The State contends that the plain language of the statute can only lead to the following conclusions: pursuant to LSA-R.S. 29:726 E(14)(c)(i), registered sexual offenders cannot be housed or sheltered in the same area of a particular shelter occupied by the general population of evacuees; and, LSA-R.S. 29:726 E(14)(c)(ii) further requires that, when feasible, registered sexual offenders should be housed in a separate shelter altogether. We agree.
To credit the City/Parish's contention that the location of the JESTC site places registered sexual offenders within the same "area" as other evacuees, would require us to interpret the term "area" to include an expanse of territory encompassing an approximately seven-mile radius of the JESTC site so as to include several distinct shelters located within that radius. Given the language of the statute, we decline to interpret the term "area" so broadly. Rather, we find that the pertinent language of the statute, construed as a whole, indicates the legislature's intent *992 to physically separate registered sexual offenders from other evacuees either within a single shelter or, preferably, by housing them in a distinctly separate shelter altogether. Accordingly, we cannot say the State's designation and proposed use of the JESTC site to house registered sexual offenders would result in the housing of these individuals within the same area as the general population of evacuees.
Alternatively, the City/Parish claims that the State's designation of the JESTC site nevertheless violates LSA-R.S. 29:726 because subsections C through E require the State to cooperate with local officials in addressing such issues. The City/Parish contends that the State failed to comply with its duty to cooperate. After a thorough review of the record, we discern no such violation.
The record indicates that the East Baton Rouge Parish Office of Homeland Security and Emergency Preparedness was notified of the selection of the JESTC site prior to its finalization. Moreover, officials from the Governor's office met with local officials to address their concerns regarding the JESTC site. The fact that after the meeting the State ultimately decided to stand by its decision to shelter registered sexual offenders at the JESTC site does not equate with a failure to cooperate. Accordingly, we conclude that the City/Parish failed to demonstrate that the State's designation of the JESTC site constitutes a violation of LSA-R.S. 29:726.
Violation of Ordinance 15:8
The City/Parish next asserts that, by virtue of its home rule charter, it was clearly within the scope of its authority in enacting Ordinance 15:8, which prohibits any person from locating or operating "an emergency facility dedicated exclusively for the housing or sheltering of registered sexual offenders during a declaration of emergency in East Baton Rouge Parish."
The City/Parish claims that the State's designation of the JESTC site as a shelter for registered sexual offenders is a clear violation of this ordinance. The State maintains that Ordinance 15:8 is unlawful because it conflicts with LSA-R.S. 29:726 and constitutes an abridgment of the State's police power.
Article VI, section 4, of the Louisiana Constitution of 1974 allows a pre-existing home rule charter municipality, as is the Baton Rouge City/Parish, the power to initiate legislation so long as the ordinance is not inconsistent with the constitution and is not an abridgment of the police power of the State. Daiquiri Cafe Sherwood, Inc. v. Parish of East Baton Rouge, 00-1745 (La.App. 1 Cir. 11/09/01), 818 So.2d 1, 3.
Although the police power of the state is best defined on a case-by-case basis, it has been generally described as the State's "inherent power to govern persons and things, within constitutional limits, for promotion of general health, safety, welfare, and morals." City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748, 757. The police power extends only to measures that are reasonable. A measure taken under the state's police power is reasonable when the action is, under all the circumstances, reasonably necessary and designed to accomplish a purpose properly falling within the scope of the police power. Id. Thus, to sustain an action under the state's police power, courts must be able to see that its operation tends in some degree to prevent an offense or evil or otherwise to preserve public health, safety, welfare or morals. Id. A litigant claiming that a local ordinance abrogates the state's police power must show that the local ordinance conflicts with an act of the state legislature that is necessary *993 to protect a vital interest of the state. City of Baton Rouge v. Williams, 95-0308 (La.10/16/95), 661 So.2d 445, 450.
It is exceedingly clear that the enactment of LSA-R.S. 29:726 E(14), as well as the State's designation of the JESTC site as an emergency shelter for registered sexual offenders, were acts performed in the interest of the public as a whole and constitute a valid exercise of the State's police power. The preservation of the lives and property of the people of this State in the event of an emergency or disaster as well as the protection of the public from sexual offenders have both been expressly recognized as vital State interests. LSA-R.S. 15:540 A; LSA-R.S. 29:722 A.
Article XII, section 11, of the Louisiana Constitution of 1974 requires that the legislature "provide for orderly and temporary continuity of state government, in periods of emergency, until normal processes of government can be reestablished in accordance with the constitution and laws of the state." In the Louisiana Homeland Security and Emergency Assistance and Disaster Act (LHSEADA), the legislature has delegated to the Governor the responsibility "for meeting the dangers to the state and people presented by emergencies or disasters." In meeting this responsibility, the Governor may issue executive orders, proclamations, and regulations having the force and effect of law. LSA-R.S. 29:724 A. The Governor is further charged with the preparation and maintenance of a homeland security and State emergency operations plan and the promulgation of standards and requirements for local and interjurisdictional disaster plans. LSA-R.S. 29:726 B and E(3).
Pursuant to LSA-R.S. 29:726 E(14)(a), the Governor's office must include a proposed shelter component within its homeland security and emergency preparedness plan, including a provision to ensure that registered sexual offenders are physically separated from the general population of evacuees. Notably, the powers bestowed upon parish presidents and parish homeland security and emergency preparedness agencies by the LHSEADA do not include the authority to provide for the availability and use of temporary emergency housing. See LSA-R.S. 29:727 F; LSA-R.S. 29:729 E. More importantly, the City/Parish's home rule charter does not expressly grant it the exclusive authority to regulate the housing of evacuees during a state of emergency.
Furthermore, we find Ordinance 15:8 to be in conflict with LSA-R.S. 29:726. As noted above, LSA-R.S. 29:726 E(14)(c) requires that registered sexual offenders be physically separated and housed apart from the general population of evacuees. When possible, the statute commands that they be sheltered in a distinctly separate shelter.
The express language of Ordinance 15:8 proscribes the operation of "an emergency facility dedicated exclusively for the housing or sheltering of registered sexual offenders during a declaration of emergency in the East Baton Rouge Parish." (Emphasis supplied.) "Exclusively" is defined in Black's Law Dictionary, 565 (6th ed.1990) as "[a]part from all others; only; solely . . . [t]o the exclusion of all others. . . ." Black's Law Dictionary, 564 (6th ed.1990) further defines "exclusive" as "[a]ppertaining to the subject alone, not including, admitting, or pertaining to any others."
Despite the City/Parish's arguments to the contrary, the language of its ordinance in no way prevents the State from housing any or all registered sexual offenders at the JESTC site in the event of an emergency; *994 it merely mandates that other evacuees be sheltered there as well. This would result in the housing of registered sexual offenders in the same area as other evacuees, the very scenario the legislature sought to eliminate.
Considering the highly personal nature of habitation combined with the lack of typical boundaries, evacuees sharing the confines of a shelter are at particular risk from the close, physical proximity of sexual offenders. The legislature has recognized the increased risk arising from such circumstances and, therefore, requires that sexual offenders report their presence at any emergency shelter to the management in addition to registering with local law enforcement authorities. LSA-R.S. 15:542 A(2)(a) and C(2); LSA-R.S. 15:543.1. Moreover, the legislature, by enacting laws prohibiting sexual offenders from coming within certain distances of schools, daycares, and playgrounds, has recognized the need to impose some degree of physical separation between sexual offenders and potential victims.
Thus, we conclude that the State's interest in protecting innocent evacuees from registered sexual offenders during a time of emergency cannot be effectuated through means other than the physical separation mandated by LSA-R.S. 29:726 and realized in the State's designation of the JESTC site. Accordingly, we find no violation of law by the State's designation and/or use of the JESTC site as a shelter for registered sexual offenders during a declared state of emergency.
B. Irreparable Harm
Alternatively, the City/Parish argues that the evidence presented at the hearing establishes that the citizens and agencies of East Baton Rouge Parish will suffer irreparable injury if "the State persists in its goal of housing or sheltering registered sex offenders [at the JESTC site] in the event of . . . [an] emergency." However, after a thorough review of the record, we cannot say that the trial court was manifestly erroneous in determining that the City/Parish had failed to make a prima facie showing of irreparable injury thereby entitling it to a preliminary injunction.
Firstly, the City/Parish seeks to enjoin the State from preparing the JESTC site in anticipation of its use as a shelter in the event of a declared emergency. However, it presented no evidence demonstrating how the State's site work, such as the erection of tents, is causing it to suffer any injury.
Secondly, the City/Parish maintains that the State's actual utilization of the JESTC site would be unduly burdensome on it given the fact that local law enforcement would have the duty of monitoring the off-site activities of the sexual offenders housed there. However, regardless of whether registered sexual offenders choose to be sheltered at the JESTC site, we note that they are not incarcerated or in the custody of the State and thus are free to go into almost any area in East Baton Rouge Parish that they desire. It is the duty of local law enforcement to enforce the law within their jurisdictions. This duty would exist even if the State had not designated the JESTC site but, instead, registered sexual offenders chose to frequent the vicinity of their own accord. Accordingly, we cannot say the trial court was manifestly erroneous in concluding that the City/Parish failed to make the required showing of irreparable harm attributable to the use of the JESTC site as an emergency shelter for sexual offenders. Finding no abuse of discretion, we hereby affirm the trial court's judgment insofar as it denies the City/Parish's request for a preliminary injunction.
*995 II. Dismissal of Claims for Declaratory Judgment and Permanent Injunction
Notwithstanding its entitlement, or lack thereof, to a preliminary injunction, the City/Parish asserts that the trial court erred in dismissing its petition for "declaratory judgment and permanent injunction" following a hearing that pertained solely to its request for a preliminary injunction. We find merit in this assignment of error.
Designed to preserve the status quo between the parties pending a determination on the merits, a preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief.[4]Bally's Louisiana, Inc. v. Louisiana Gaming Control Bd., 99-2617 (La.App. 1 Cir. 1/31/01), 807 So.2d 257, 263, writ denied, 01-0510 (La.1/11/02), 807 So.2d 225. The principal demand for a permanent injunction, as opposed to the preliminary injunction, is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or decide issues regarding the merits. Only when the parties have expressly agreed to submit the case for a final decision at the hearing on the rule for a preliminary injunction, may the ruling on the preliminary injunction definitively dispose of the merits of the case. Bally's, 807 So.2d at 263. An express agreement by the parties to consolidate the preliminary and permanent injunctions is essential; a trial court is without the authority to unilaterally convert a hearing for a preliminary injunction into a judgment of permanent injunction. See McCurley v. Burton, 03-1001 (La.App. 1 Cir. 4/21/04), 879 So.2d 186, 188-189; see also Bally's, 807 So.2d at 262-63.
The record in the present matter reveals no express agreement between the City/Parish and the State to submit the case for a final decision on the City/Parish's request for a permanent injunction. On the contrary, the colloquy that occurred at the beginning of the hearing demonstrates that the only issue before the court was the City/Parish's request for a preliminary injunction. Accordingly, it was error for the trial court to dismiss the City/Parish's request for a permanent injunction, the merits of which can only be determined following a full trial under ordinary process.
Additionally, the City/Parish's demand for a declaratory judgment is a corollary of its request for a permanent injunction. See Department of Health and Hospitals v. Teachers' Retirement System of Louisiana, 95-1034 (La.App. 1 Cir. 12/15/95), 665 So.2d 748, 751. Like a demand for permanent injunctive relief, a suit for a declaratory judgment is an ordinary action, not a summary proceeding. In re Melancon, 05-1702 (La.7/10/06), 935 So.2d 661, 665. Thus, the trial court also erred in dismissing the City/Parish's demand for a declaratory judgment. Accordingly, we vacate the trial court's judgment insofar as it dismisses the City/Parish's petition for "declaratory judgment and permanent injunction," and we remand this matter for further proceedings consistent with the opinions expressed herein.

CONCLUSION
For all of the foregoing reasons, the judgment denying the City/Parish's request for a preliminary injunction is affirmed. In all other respects, the *996 judgment is vacated, and this matter is remanded to the trial court for further proceedings. Costs of this appeal in the amount of $899.36 are to be shared equally by the parties.
JUDGMENT AFFIRMED IN PART; VACATED IN PART; REMANDED.
NOTES
[1] Louisiana Code of Civil Procedure article 3602 states in part: "An application for a preliminary injunction shall be assigned for hearing not less than two nor more than ten days after service of the notice."
[2] The written reasons, dated November 16, 2006, concluded with the following language:

This court finds as a matter of law that the petition for declaratory judgment praying that the JESTC site as the shelter for unique populations is in violation of Act 285 of 2006 is denied. This court finds as a matter of law the petition for declaratory judgment stating that the State's designation of the JESTC site as the shelter for unique populations to be in violation of Ordinance 15:8 is hereby denied. This court finds as a matter of law that the State be permanently enjoined from housing registered sexual offenders at the JESTC site in the event of a declared state of emergency is denied. The court also denies the petitioner's request for costs and attorney fees and hereby dismisses plaintiff's petition with prejudice and at its cost.
[3] An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction. LSA-C.C.P. art. 3612 B.
[4] A preliminary injunction is only provisional and is not intended as a resolution of the merits of a controverted issue. Levine v. First National Bank of Commerce, 06-0394, 06-0439 (La.12/15/06), 948 So.2d 1051, 1056-57 n. 4.