Dear Mr. Braud:
Your request for an opinion has been forwarded to me for research and reply. The fundamental inquiry raised is whether Plaquemines Parish Government (hereinafter "PPG") may establish a separate account to be identified as the "25th JDC Misdemeanor Probation Fees Account."
It is PPG's assertion that La.C.Cr.P. art. 895.1(c) fails to provide a procedure for the administration of fees by persons placed on supervised probation for a misdemeanor violation. Due to this alleged omission, PPG would like to establish a misdemeanor probation fees account similar to the one authorized for the Criminal Court Fund (La.R.S. 15:571.11), or as provided by La.R.S. 13:2562.22 and/or La.R.S. 13:2563.17.
La.C.Cr.P. art. 895.1(c) states as follows:
C. When the court places the defendant on supervised probation, it shall order as a condition of probation a monthly fee of not less than fifty nor more than one hundred dollars payable to the Department of Public Safety and Corrections or such other probation office, agency, or officer as designated by the court, to defray the cost of supervision. If the probation supervision services are rendered by an agency other than the department, the fee may be ordered payable to that agency. These fees are only to supplement the level of funds that would ordinarily be available from regular state appropriations or any other source of funding.
(West 2009) (emphasis added). *Page 2 
Through a subsequent conversation with your office, we have learned that the district judges of Plaquemines Parish plan on utilizing individual probation officers to supervise misdemeanor offenders.[1] Because DOC will not be the supervising agency, your office would like to know if PPG may establish a separate account for misdemeanor probation fees. Our office has reached the conclusion that such an account may not be created.
La.C.Cr.P. art. 895.1(c) establishes the procedure for payment of fees when a criminal defendant is placed on supervised probation; it does not distinguish between felonies and misdemeanors. This directive for the payment of fees for supervisory probation falls within the Code of Criminal Procedure. A plain reading of the foregoing article simply directs the court to issue the alternative supervising agency a monthly fee of $50.00 to $100.00, when the Department of Corrections ("DOC") is not providing the supervised release.
PPG's home rule charter was established before the enactment of Louisiana's 1974 Constitution. As such, PPG may retain all of the powers it has pursuant to its pre-1974 charter, as long as these powers are not inconsistent with the Louisiana Constitution or abridge the police power of the State. "Article VI, section 4, of the Louisiana Constitution of 1974 allows a pre-existing home rule charter municipality, [as in Washington Parish], the power to initiate legislation so long as the ordinance is not inconsistent with the constitution and is not an abridgement of the police power of the State."[2] In other words, PPG's home rule charter's power is limited only by requiring that the local government not exercise its powers inconsistently with the 1974 Constitution, or enact ordinances that suppress the State of Louisiana's police power.[3]
Therefore, PPG must be certain that its exercise of power — in this case, the creation of a misdemeanor probation fees account — does not contravene the Louisiana Constitution or abridge state police powers. We conclude that such an account would result in such a contravention.
Section 9(B) of Article VI of the Louisiana Constitution specifically states that "the police power of the state [of Louisiana] shall never be abridged." In City of Baton Rouge v.State of Louisiana, et al., 07-0005 (La.App. 1 Cir. 9/14/07), 970 So.2d 985, the Louisiana Court of Appeal for the First Circuit explained that "[a]lthough the police power of the state is best defined on a case-by-case basis, it has been generally described as the State's `inherent power to govern persons and things, *Page 3 
within constitutional limits, for promotion of general health, safety, welfare, and morals.'"[4] It is this office's belief that the procedures that affect an individual who has been involved as a criminal defendant within the criminal justice system fall within the State Legislature's inherent powers to promote the general safety and welfare of those individuals and the public at large. For instance, the span of the Louisiana Legislature's interest in this area encompasses the specific regulation of firearms by convicted felons who are on probation, [5] to the more general availability of probation as an option for a certain crime, [6] simply based upon the legislature's belief that probation would serve the interest of the public welfare and safety. Here, the Louisiana Legislature determined that supervised probation is an available option for some criminal defendants and has provided for a means of supplementing the funding for this alternative to incarceration.
The Louisiana Legislature's decision to enact La.C.Cr.P. art. 895.1 reflects its interest in ensuring that there is "supplemental" financial support for the entity placed in charge of supervising those criminal defendants placed on supervised probation. According to the article, if DOC is not the supervising agency, then the $50.00 to $100.00 fee must be paid to the other designated supervising office or agency. The article also states that the supervision fee is to be used to defray the costs of probation supervision. As previously noted, the supervision of any misdemeanor defendants in PPG will be conducted by probation officers under the direction of the district judges. Whether these probation officers are part of the Court's "Misdemeanor Probation Department" is unknown. Regardless, the 25th JDC will be shouldering some of the responsibility for the supervised probation of misdemeanor offenders that once belonged solely to DOC; thus, the Court's probation department should be the recipient of this fee. To allow PPG to create an alternative fees account would conflict with an act of the State Legislature designed to protect an essential interest of the state: the general safety and welfare of the public.
Another obstacle that might hinder PPG's ability to transfer such funds to a separate account is Section 14 of article VII of the Louisiana Constitution, which clearly prohibits the use of funds of the state or any political subdivision from being "loaned, pledged, or donated to or for any person, association, or *Page 4 
corporation, public or private." Although this opinion will not delve into this analysis, this office has delineated certain elements that must be satisfied to ensure that this constitutional provision is not violated and that "public funds or property are [not] gratuitously alienated," based upon the Louisiana Supreme Court decision, Board of Directors of the Industrial DevelopmentBoard of the City of Gonzales, Louisiana, Inc. v. All Taxpayers,Property Owners, Citizens of the City of Gonzales, 05-2298 (La. 9/6/06), 938 So.2d 11.
Overall, it is our office's opinion that PPG may not create a separate misdemeanor probation fees account. Based on article 895.1 of the Louisiana Code of Criminal Procedure, if the district court elects to utilize its own probation officers or department to supervise misdemeanor defendants on probation, then any fees collected should be directed to the district court's probation department because DOC is not involved. These funds have been dedicated for this particular purpose and may not be transferred without conflicting with an act of the State Legislature that is essential to protect an essential interest of the state.
We hope that this information sufficiently answers your inquires. If we can be of further assistance, please do not hesitate to contact us.
Very truly yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By:__________________________ KATHERINE K. GREEN Assistant Attorney General
JDC:KG:jv
[1] Telephone conference with Mr. Braud, November 5, 2009.
[2] City of Baton Rouge v. State of Louisiana, et al., 07-0005 (La.App. 1 Cir. 9/14/07), 970 So.2d 985, 992.
[3] City of N. O. v. Bd of Comm'rs of Orleans LeveeDistrict, 93-0690 (La. 7/5/94), 640 So.2d 237, 244.
[4]
07-0005 (La.App. 1 Cir. 9/14/07), 970 So.2d 985, 992
(internal citations omitted);see also, Morial v. Smith Wesson Corp., 00-1132 (La. 4/3/01),785 So.2d 1, 18, reh'g denied 4/27/01;Francis, et al. v. Morial,455 So.2d 1168, 1172-73 (La. 1984)("To sustain legislation under the police power, the courts must be able to see that its operation tends in some degree to prevent an offense or evil or otherwise to preserve the public health, morals, safety or welfare.").
[5] State v. Wiggins, 432 So.2d 234, 237 (La. 1983).
[6] State v. Everfield, 342 So.2d 648, 654 (La. 1977) (the Court discussed the Lousiana Legislature's evaluation of the gravity of crimes and whether probation was appropriate for armed robbery charge).